963 A.2d 358 (2009)
405 N.J. Super. 39
STATE of New Jersey, Plaintiff-Respondent,
v.
Anthony McNEIL a/k/a Minister Mahdian Ali, Defendant-Appellant.
No. A-2255-06T1
Superior Court of New Jersey, Appellate Division.
Submitted November 6, 2008.
Decided January 14, 2009.
*360 Yvonne Smith Segars, Public Defender, for appellant (Lee March Grayson, Designated Counsel, on the brief).
Anne Milgram, Attorney General, for respondent (Hillary Horton, Deputy Attorney General, of counsel and on the brief).
Before Judges STERN, WAUGH and NEWMAN.
The opinion of the court was delivered by
STERN, P.J.A.D.
This appeal requires us to decide whether a defendant found competent to stand trial must be afforded the constitutional right to self-representation generally granted to defendants under the Sixth Amendment of the federal constitution and Article I, paragraph 10 of the New Jersey Constitution. We hold that the fact-finding in this case justified the trial judge's decision to preclude self-representation, and affirm defendant's conviction.
Defendant, represented by counsel, was convicted at a non-jury trial of conspiracy, attempted theft by deception and theft by deception. He was sentenced to concurrent terms of ten years in the custody of the Commissioner of the Department of Corrections, with five years to be served before parole eligibility, for the second-degree theft by deception and conspiracy convictions, and to a concurrent sentence of five years on the conviction for third-degree attempt. Defendant does not argue merger applies, or that the conspiracy did not transcend the two substantive transactions alleged.
On this appeal defendant argues:

POINT I: IN VIEW OF THE FACT THAT THE TESTIMONY GIVEN BY THE STATE'S PSYCHIATRIC EXPERT WITNESS DURING THE SECOND COMPETENCY HEARING WAS NOT MADE TO WITHIN A REASONABLE DEGREE OF MEDICAL CERTAINTY OR PROBABILITY AND CONSTITUTED AN IMPROPER NET OPINION, PLUS THE TRIAL COURT'S FAILURE TO QUESTION THE DEFENDANT PERSONALLY AND THE DEFENDANT'S BEHAVIOR DURING THE TRIAL AND THROUGHOUT THE PROCEEDINGS, THE TRIAL COURT VIOLATED THE DEFENDANT'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS OF LAW BY FINDING THE DEFENDANT COMPETENT TO STAND TRIAL.

POINT II: HAVING DETERMINED THAT THE DEFENDANT WAS COMPETENT TO STAND TRIAL, THE COURT SHOULD HAVE CONDUCTED A "PAINSTAKING AND THOROUGH INQUIRY" IN ACCORDANCE WITH CRISAFI AND REDDISH TO THOROUGHLY EXPLORE THE ISSUE REGARDING THE DEFENDANT'S REQUEST TO PROCEED PRO SE, AND THE COURT'S FAILURE TO DO SO CONSTITUTES REVERSIBLE ERROR.

POINT III: USE OF THE DEFENDANT'S PRIOR SIXTEEN-YEAR-OLD CONVICTION WAS UNDULY *361 PREJUDICIAL AND SHOULD HAVE BEEN EXCLUDED FROM THE TRIAL AS BEING TOO REMOTE AND THE STATE'S CROSS-EXAMINATION OF THE DEFENDANT INTO THE DETAILS OF THE PRIOR CONVICTION WAS IMPROPER.

POINT IV: THE JUDGE SHOULD HAVE DECLARED A MISTRIAL AND RECUSED HIMSELF FROM FURTHER PROCEEDINGS BECAUSE HE LOST CONTROL OVER THE PROCEEDINGS.

POINT V: THE SENTENCE IMPOSED WAS EXCESSIVE UNDER THE CIRCUMSTANCES AND MUST BE VACATED.
There is no contest to the sufficiency or weight of the evidence, and we need not detail the proofs at trial. The trial judge stated the elements of each offense in rendering his findings, and defendant challenges neither his statement of the elements nor the findings. See State v. Smith, 253 N.J.Super. 145, 147 n. 1, 601 A.2d 247 (App.Div.1992). See also R. 1:7-4(a). The sentencing point is without merit particularly because, as the trial judge noted, most of defendant's five prior convictions were for similar crimes.
Defendant sought to represent himself at trial. The State opposed the application after defendant refused to accept discovery. The State asked Judge Thomas Smith, Jr. to deny defendant's request to represent himself, and requested the appointment of standby counsel if defendant was permitted to "proceed pro se."
At the hearing in April 2003, defendant stated that he desired to represent himself because legal representation was against his religious beliefs and because he was immune from criminal prosecution under "God's laws."[1] At the conclusion of the hearing and after a lengthy colloquy with defendant, Judge Smith ruled that defendant could represent himself but "reserve[d]" decision on the issue of standby counsel to assist him until the judge could see how defendant handled himself during pretrial proceedings.[2]
However, due to his conduct during pretrial hearings and while awaiting trial in the jail, defendant was subsequently admitted to the Ancora Psychiatric Hospital (Ancora) for observation and a mental health evaluation to determine whether he was competent to stand trial. See N.J.S.A. 2C:4-5. At a hearing on April 6 and 21, 2004, at which defendant was represented by the Public Defender, experts for both defendant and the State testified. See N.J.S.A. 2C:4-6. They disagreed as to defendant's competence to stand trial but agreed that defendant was not fit to serve as his own attorney.
*362 Dr. Benjamin Liberatore, a psychiatrist who practiced at Ancora, testified for the State. Dr. Liberatore testified that defendant had been transferred to Ancora on at least two occasions. According to Dr. Liberatore, staff members at the Burlington County Jail were concerned because defendant had been "acting strangely," "might be depressed and was somewhat paranoid." At Ancora, Risperdal, an antipsychotic medication, and Lexapro, an anti-depressant, were prescribed and defendant had attempted to commit suicide by slicing his neck.
Dr. Liberatore further testified that defendant had a psychotic disorder and suffered from depression, hallucinations, paranoid ideations, and idiosyncratic thinking. However, Dr. Liberatore concluded that defendant was competent to stand trial because he was oriented "to person, place and time," was aware of the charges against him, and had no cognitive deficits. However, Dr. Liberatore reported that defendant was "not fit to represent himself in court."
Defendant's expert, Dr. Kenneth Weiss, testified that defendant was psychotic, suffered from a delusional disorder and was not competent to stand trial or "fit to proceed." Dr. Weiss also concluded that defendant was not "fit to serve as his own attorney."
At the end of the two-day hearing, on April 21, 2004, Judge Smith determined that defendant was "incompetent to stand trial" at the time. See N.J.S.A. 2C:4-4.
A review hearing was held on October 12, 2004, at which time defendant was represented by the same assigned or designated public defender. See N.J.S.A. 2C:4-6. During this hearing, Dr. Liberatore again testified that defendant was competent to stand trial. Dr. Liberatore explained that, in his opinion, defendant was not then "suffering from any significant medical condition" or "mental illness," that he understood "the nature of the legal process and the charges against him," and was capable of assisting counsel. Dr. Liberatore based these findings on several interviews that he had conducted with defendant as his "treating" psychiatrist at Ancora since September 2003, and the observations he made of defendant over the course of the prior year while at Ancora. He also reported a similar conclusion of "the treatment team." Dr. Liberatore also gave detailed reasons, and did so based on his "opportunity to see and evaluate" defendant for a year, as to why he disagreed with Dr. Weiss' prior findings.
No other witnesses testified at the hearing, and defendant produced no expert. Accordingly, Judge Smith ruled that defendant was competent to stand trial. The judge determined, however, as had been agreed by the experts at the April hearing, that defendant was not competent to represent himself. The judge appointed counsel to represent defendant at trial.
During the trial, defendant was represented by the same attorney as at the pretrial proceedings. Defendant objected to his counsel's tactics and strategy. He contended that his attorney was withholding documents and information from him. At one point, near the close of the defense's case, defendant wanted to fire his attorney and represent himself. Judge Smith denied defendant's application.
Defendant testified at trial that he was a victim of a false arrest. Defendant asserted that the "Certified Tender of Payment" or "Bond Release" sold to co-defendant for $1,500, and used by her in an endeavor to buy a car and a home, was legal tender due and payable under a treaty with the Washitaw nation, and subject to filings under the Uniform Commercial Code. He also claimed he was owed $156,000,000 by *363 the City of Philadelphia and that he had previously deposited coins, cash and other notes with the Burlington County Jail in the amount of $5,000,000. Defendant went on to state that he had also deposited $25,000,000 with the United States Treasury Department. Finally, defendant declared that his "trade name" was worth one hundred billion dollars. When defendant indicated towards the end of the trial that he wanted new counsel, the judge suggested that if defendant had assets he could retain counsel of his choice, but that it was then too late to do so.
Defendant argues that the trial judge erred in finding him competent to stand trial, resulting in a violation of defendant's Fourteenth Amendment right to due process of law. He alternatively contends that, if he was competent to stand trial, he had the constitutional right to represent himself and was denied that right.
It is clear that "the criminal trial of an incompetent defendant violates due process." Cooper v. Oklahoma, 517 U.S. 348, 354, 116 S.Ct. 1373, 1376, 134 L.Ed.2d 498, 506 (1996) (quoting Medina v. California, 505 U.S. 437, 453, 112 S.Ct. 2572, 2581, 120 L.Ed.2d 353, 368 (1992)). In order to be placed on trial a defendant must understand the essential elements of "a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so." Riggins v. Nevada, 504 U.S. 127, 139-40, 112 S.Ct. 1810, 1817, 118 L.Ed.2d 479, 492 (1992) (Kennedy, J., concurring in judgment) (citing Drope v. Missouri, 420 U.S. 162, 171-72, 95 S.Ct. 896, 903, 43 L.Ed.2d 103, 113 (1975)). See also Cooper, supra, 517 U.S. at 354-56, 116 S.Ct. at 1376-77, 134 L.Ed.2d at 506-07. Moreover, a defendant may not be placed on trial for a criminal offense unless he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understandingand ... a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 788, 4 L.Ed.2d 824, 825 (1960).
New Jersey law may afford even greater due process protection to defendants. N.J.S.A. 2C:4-4(a) provides that "[n]o person who lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as such incapacity endures." N.J.S.A. 2C:4-4(b) details what must be established to assure mental competency to stand trial.[3]
*364 Under New Jersey law, the State bears the burden of proving by a preponderance of the evidence that a defendant is competent to stand trial. State v. Purnell, 394 N.J.Super. 28, 49, 925 A.2d 71 (App. Div.2007); State v. M.J.K., 369 N.J.Super. 532, 547, 849 A.2d 1105 (App.Div.2004), appeal dismissed, 187 N.J. 74, 899 A.2d 298 (2005). Compare, Cooper, supra, 517 U.S. at 355, 116 S.Ct. at 1377, 134 L.Ed.2d at 506; Medina, supra, 505 U.S. 437, 112 S.Ct. 2572, 120 L.Ed.2d 353 (burden for federal constitutional purposes). Defendant argues that the State failed to meet that burden in this case because Dr. Liberatore "did not provide a medical opinion to within a reasonable degree of medical certainty." Defendant contends that Dr. Liberatore's opinions were bare conclusions unsupported by facts. Further, defendant asserts that Dr. Liberatore "failed to disclose both the process utilized in reaching [his] conclusions" and "the nature and scope of his clinical observations or the psychiatric standards utilized." Accordingly, defendant contends that Dr. Liberatore's testimony constituted a mere "net opinion."
Pursuant to N.J.R.E. 703, "an expert's opinion [must] be based on facts, data, or another expert's opinion, either perceived by or made known to the expert, at or before trial." Rosenberg v. Tavorath, 352 N.J.Super. 385, 401, 800 A.2d 216 (App.Div.2002). "Under the `net opinion' rule, an opinion lacking in such foundation and consisting of bare conclusions unsupported by factual evidence is inadmissible." Ibid. (quoting Johnson v. Salem Corp., 97 N.J. 78, 91, 477 A.2d 1246 (1984)). "The rule requires the expert `to give the why and wherefore' of his or her opinion, rather than a mere conclusion." Ibid. (quoting Jimenez v. GNOC, Corp., 286 N.J.Super. 533, 540, 670 A.2d 24 (App.Div), certif. denied, 145 N.J. 374, 678 A.2d 714 (1996)).
Dr. Liberatore testified at the first hearing that defendant had a psychotic disorder. He described the symptoms and gave his reasons. In that regard, Dr. Liberatore stated that it was his medical opinion, within "a reasonable degree of medical certainty," that defendant was competent to stand trial.
Dr. Liberatore again testified at the October 12, 2004 review hearing that defendant was competent to stand trial. Dr. Liberatore based this finding on several interviews that he had conducted with defendant, as well as his personal observations of defendant made over the prior year. From those interviews and observations, Dr. Liberatore found that defendant did not then suffer from any mental condition or illness precluding trial, and demonstrated an understanding of the necessary components of a criminal trial. Defendant presented no contrary proofs, as he had through Dr. Weiss six months before.
Defendant notes that at the review hearing in October, Dr. Liberatore never stated that his opinion was rendered within a "reasonable degree of medical certainty." However, at the first hearing, Dr. Liberatore expressly used those words in support of his position that defendant was capable of standing trial. Furthermore, the phrase "a reasonable degree of medical certainty" was also used by Dr. Liberatore in his September 30, 2004, report in advance of the second hearing. That report refers to each of the factors in N.J.S.A. 2C:4-4(b). Dr. Liberatore's conclusion was not a "net opinion" and we must accord great deference to Judge Smith's determination of competency. See M.J.K., supra, 369 N.J.Super. at 548, 849 A.2d 1105; State v. Moya, 329 N.J.Super. 499, 506, 748 A.2d 604 (App.Div.), certif. denied, 165 N.J. 529, 760 A.2d 783 (2000). See also Eckert v. Rumsey Park Assocs., 294 N.J.Super. 46, 51, 682 A.2d 720 (App.Div. *365 1996), certif. denied, 147 N.J. 579, 688 A.2d 1054 (1997) (quoting Aspiazu v. Orgera, 205 Conn. 623, 535 A.2d 338, 342-43 (1987)) ("the `talismanic' or `magical words represented by the phrase "reasonable degree of medical certainty"'" are unnecessary if the meaning is conveyed).
As already noted, defendant further contends that the trial judge committed reversible error by not conducting a "painstaking and thorough inquiry" into his request to proceed pro se and that the conviction must be reversed because defendant was denied counsel without doing so. After all, it would appear that if the judge found the defendant competent to stand trial he should be able to exercise his constitutional right of self-representation. In other words, defendant equates competence to stand trial with the capacity and ability to represent himself.
Criminal defendants have a state and federal constitutional right to waive their right to counsel and to proceed pro se. See, e.g., Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581 (1975); State v. Crisafi, 128 N.J. 499, 509-10, 608 A.2d 317 (1992). However, waiver of the right to be represented by counsel must be done knowingly and intelligently, after the disadvantages and dangers of self-representation are carefully examined. State v. Reddish, 181 N.J. 553, 580, 592-95, 859 A.2d 1173 (2004); Crisafi, supra, 128 N.J. at 510-12, 608 A.2d 317. Because "the right to self-representation is not absolute," a defendant may, at times, "be required to cede control of his defense to protect the integrity of the State's interest in fair trials and permit courts to ensure that their judgments meet the high level of reliability demanded by the Constitution." Reddish, supra, 181 N.J. at 587, 859 A.2d 1173. See also State v. DuBois, 189 N.J. 454, 465-69, 916 A.2d 450 (2007).
The issue before us was recently considered by the United States Supreme Court in Indiana v. Edwards, ___ U.S. ___, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008). In Edwards, the Court concluded that the federal "Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under Dusky but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." Id. at ___, 128 S.Ct. at 2388, 171 L.Ed.2d at 357. Edwards does not prevent a State from permitting a defendant with a mental illness from representing himself if competent to stand trial; rather, it held that the Sixth and Fourteenth Amendments do not require it. See id. at ___, 128 S.Ct. at 2384-85, 171 L.Ed.2d at 353-55 (citing Godinez v. Moran, 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993)). But see id. at ___, 128 S.Ct. at 2389, 171 L.Ed.2d at 358 (Scalia, J., dissenting) (noting a defendant competent to stand trial, like any defendant, is entitled to waive his right to counsel). Specifically, Edwards permits a state to limit the right of self-representation to assure a fair trial:
In certain instances an individual may well be able to satisfy Dusky's mental competence standard for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel. [Id. at ___, 128 S.Ct. at 2386, 171 L.Ed.2d at 356.]
Stated differently, a defendant may be competent to stand trial if represented by counsel, but not have the "ability to play the significantly expanded role required for self-representation." Id. at ___, 128 S.Ct. at 2387, 171 L.Ed.2d at 356 (quoting amicus brief). Thus, the Court concluded that "the Constitution permits judges to *366 take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so." Id. at ___, 128 S.Ct. at 2387-88, 171 L.Ed.2d at 357. Thus, for federal constitutional purposes, a defendant may be competent to stand trial but not to represent himself. See ibid.
We are satisfied that a trial judge in New Jersey may, consistent with Edwards and the State Constitution, deny a defendant the right of self-representation when the record sustains a finding, made for specific reasons, that a mentally ill defendant is competent to stand trial but cannot knowingly and intelligently waive his right to counsel without being deprived of a fair trial. We recognize that the federal competency standards may not be as protective of a defendant as New Jersey's, but we see no dramatic or substantive differences for purposes of Edwards. We urge, however, that a defendant must be mentally ill and not merely difficult to handle or disruptive to be deprived of the right of self-representation. See id. at ___, 128 S.Ct. at 2389-94, 171 L.Ed.2d at 358-65 (Scalia, J., dissenting). See also, e.g., Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); State v. McCombs, 81 N.J. 373, 378-79, 408 A.2d 425 (1979).
A reading of our Supreme Court's opinion in Reddish expressing reservations about Faretta with respect to the right of self-representation under the federal constitution makes it clear to us that our Supreme Court would not preclude assignment of counsel where a mentally ill defendant could not fairly represent himself. See Reddish, supra, 181 N.J. at 579-87, 859 A.2d 1173. Indeed, in Reddish, Justice Zazzali expressly stated that application of Faretta and Martinez v. Court of Appeal of Cal., 528 U.S. 152, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000), "coupled with the concerns regarding the reach of the right of self-representation, call for a cautious interpretation of Faretta." Id. at 587, 859 A.2d 1173. Moreover, our Supreme Court expressly noted, as the United States Supreme Court made clear in Edwards, that "the competence necessary to make a knowing and intelligent waiver of counsel is different from the competence to conduct a defense." See id. at 592, 859 A.2d 1173 (citing Godinez, supra, 509 U.S. at 399, 113 S.Ct. at 2686-87, 125 L.Ed.2d at 332).
On October 12, 2004, after holding the second competency hearing, Judge Smith found defendant competent to stand trial but not competent to represent himself. Judge Smith's finding that defendant was not competent to represent himself pro se was not only supported by Dr. Liberatore's opinion, but also by defendant's own conduct. During extensive pretrial colloquies with the court, defendant explained that the indictment did not apply to him and that he was not subject to the laws or jurisdiction of the State. He claimed immunity bestowed upon him by God and based upon his "foreign neutral status" as a minister by decree of "the Empress" and the President of the United States.
Edwards holds that the constitutional right to self-representation may be outbalanced by the State's interest in providing a fair trial to a mentally ill defendant competent to stand trial, but not able to represent himself or herself. Edwards, supra, ___ U.S. at ___, 128 S.Ct. at 2387-88, 171 L.Ed.2d at 357. Notwithstanding that States may permit mentally ill defendants to waive counsel, we see no state-law basis for not following Edwards where the facts warrant a judge to do so. Hence, while Edwards may hold only what the States may permit, we see no basis for not following *367 its principle to assure a fair trial. To that end, Judge Smith's careful fact finding warrants support both as to defendant's competence to stand trial and inability to represent himself.
We find no need for comment on the additional points. R. 2:11-3(e)(2). The judgment is affirmed.
NOTES
[1] Defendant claimed he was a minister of the nation of the Washitaw, and that his religion forbid the use of attorneys. During the subsequent trial, defendant testified that he is a member of the "Washitaw Muur" which, he claims, is an "ancient civilization of the Washitaw De Dugdahmoundyah Empire under the [rule of the] Empress Tiara Washitaw Turner Goston El-Bay" (the Empress). Defendant explained that the Empress is the sole owner of the "Land." Defendant stated that he does not "reside" anymore, but instead lived within his own body, and maintained various "embassies" where he stayed while traveling. He also claimed immunity from prosecution as a minister. We never-the-less conclude, based on defendant's colloquies with the judge and the expert testimony, that the record supports the finding of competency.
[2] We note the Supreme Court's decision in State v. Reddish, 181 N.J. 553, 593-96, 859 A.2d 1173 (2004), with respect to appointing standby counsel following an adequate waiver was rendered after this hearing was concluded.
[3] N.J.S.A. 2C:4-4(b) provides:

A person shall be considered mentally competent to stand trial on criminal charges if the proofs shall establish:
(1) That the defendant has the mental capacity to appreciate his presence in relation to time, place and things; and
(2) That his elementary mental processes are such that he comprehends:
(a) That he is in a court of justice charged with a criminal offense;
(b) That there is a judge on the bench;
(c) That there is a prosecutor present who will try to convict him of a criminal charge;
(d) That he has a lawyer who will undertake to defend him against that charge;
(e) That he will be expected to tell to the best of his mental ability the facts surrounding him at the time and place where the alleged violation was committed if he chooses to testify and understands the right not to testify;
(f) That there is or may be a jury present to pass upon evidence adduced as to guilt or innocence of such charge or, that if he should choose to enter into plea negotiations or to plead guilty, that he comprehend the consequences of a guilty plea and that he be able to knowingly, intelligently, and voluntarily waive those rights which are waived upon such entry of a guilty plea; and
(g) That he has the ability to participate in an adequate presentation of his defense.