# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Sheley*, 2012 IL App (3d) 090933

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NICHOLAS T. SHELEY, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-09-0933 |
| Filed | January 5, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for aggravated battery, aggravated assault and criminal damage to state-supported property, the trial court erred in denying defendant's request to proceed *pro se* where the trial court did not find that defendant suffered from a "severe mental illness" to the extent that he was not competent to conduct trial proceedings by himself, as required by the decision of the United States Supreme Court in *Indiana v. Edwards*, even though defendant may have had difficulty controlling his emotions, especially when there was nothing in the record showing that allowing him to proceed *pro se* would result in an unfair trial. |
| Decision Under Review | Appeal from the Circuit Court of Knox County, No. 09-CF-225; the Hon. Stephen C. Mathers, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Fletcher P. Hamill (argued), of State Appellate Defender's Office, of Ottawa, for appellant.

John T. Pepmeyer, State's Attorney, of Galesburg (Terry A. Mertel and Thomas D. Arado (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel      JUSTICE LYTTON delivered the judgment of the court, with opinion.

Justices Carter and Holdridge concurred in the judgment and opinion.

**OPINION**

¶ 1  Defendant Nicholas Sheley was convicted of aggravated battery (720 ILCS 5/12-4(b)(18) (West 2008)), aggravated assault (720 ILCS 5/12-2(a)(6) (West 2008)) and criminal damage to government-supported property (720 ILCS 5/21-4(1)(a) (West 2008)). On appeal, defendant argues that the trial court erred in denying his request to proceed *pro se* because the court failed to find, pursuant to *Indiana v. Edwards*, 554 U.S. 164 (2008), that he suffered from a "severe mental illness" to the point that he could not conduct his own defense. We reverse and remand.

¶ 2  While in custody on multiple murder charges, defendant was charged with aggravated battery, aggravated assault and criminal damage to property for allegedly dismantling a chair belonging to the Knox County jail and throwing its legs at a group of correctional officers.

¶ 3  Defense counsel was appointed to represent defendant and subsequently filed a motion entitled "Response to Defendant's Oral Motion to Represent Himself." In the motion, counsel indicated that defendant had made an earlier oral motion to represent himself. Counsel further noted that defendant was awaiting trial for first degree murder and faced the death penalty in Knox County case No. 08-CF-338.

¶ 4  Attached to the motion was a report by neurologist Dr. Robert Hanlon. Dr. Hanlon was asked to examine defendant in case No. 08-CF-338 and provide an objective assessment of defendant's cognitive abilities, including his mental capacity to stand trial, waive trial counsel and represent himself at trial. Dr. Hanlon interviewed defendant on October 31, 2008, and December 6, 2008. His report stated that during the interviews, defendant was "consistently alert, responsive, and oriented to person, place, time, and reason for the evaluation." He also noted that defendant had a history of poor anger management and an explosive personality and that defendant had engaged in "high-volume crack cocaine binges" when he was not in jail. He stated that defendant's frustration tolerance was variable but that he showed normal persistence and "termination of responses."

¶ 5        Defendant tested in the normal intelligence quotient (IQ) range and his overall executive function was found to be normal. In addition, defendant was able to explain the charges against him; he understood the roles of the courtroom personnel and the witnesses; and he understood the difference between a jury trial and a bench trial.

¶ 6        Dr. Hanlon diagnosed defendant with cognitive disorder not otherwise specified, cocaine and alcohol abuse, and personality disorder not otherwise specified. He believed defendant possessed the basic mental ability to render him fit to stand trial and that defendant had the capacity to knowingly and intelligently appreciate his right to counsel. However, he concluded that defendant could not "realistically appreciate the consequences and potential pitfalls of waiving his right to counsel." He specifically noted that defendant could organize and prepare for trial and could understand courtroom developments but could not consistently think coherently and objectively or maintain his temper. Thus, overall, Dr. Hanlon opined that defendant lacked the cognitive capacity to effectively represent himself in a courtroom.

¶ 7        At the hearing on the motion to proceed *pro se*, the trial court addressed defendant and read several admonishments to him. Defendant indicated that he understood the trial proceedings. Specifically, defendant stated that he understood that he would have to follow certain rules and procedures; that the prosecutor and defender were experienced attorneys who understood those rules; that if he missed an objection, he might waive his right to challenge inadmissable evidence on appeal; that he would have to prepare his own jury instructions and make his own trial decisions; that the judge would not be able to help him; that he would not be able to change his mind regarding self-representation midtrial; and that a conviction could be used against him in a capital sentencing hearing. The defendant stated that he understood the implications of self-representation and still wished to proceed *pro se*.

¶ 8        Ten days later, the defendant was arraigned on the charges in this case. While before the court, defendant stated that he had decided to accept the public defender as his counsel.

¶ 9        Four months later, defense counsel and defendant appeared in court on defendant's motion to extend discovery dates. Defense counsel indicated to the court that he needed more time to file the motions he wanted to file. The court expressed its displeasure at this. In response to the trial court's reaction, defendant asked to address the court and stated, "I see where this is heading at this time." He asked the court not to hold his counsel's failures against him and indicated that he was unhappy with the way in which his attorney was handling the case. He then stated that he no longer wanted to be represented by counsel and that he wished to proceed *pro se* and that he might be able to hire private counsel. The court informed defendant that a written request to proceed *pro se* was required, and the matter was continued.

¶ 10       Shortly thereafter, defendant filed a motion to proceed *pro se*. The motion raised several issues regarding defense counsel's strategies and noted that psychiatrist Dr. Terry Killian had examined defendant and found him capable of representing himself.

¶ 11       Dr. Killian's report was subsequently presented to the court. In his report, Dr. Killian stated that he had been appointed by the trial court to evaluate defendant's fitness to stand trial in case No. 08-CF-388. He conducted two interviews with defendant, one lasting 4 hours

and 48 minutes and the other lasting nearly 3 hours. Dr. Killian noted that defendant demonstrated a thorough understanding of the charges against him. Defendant told Dr. Killian that he felt his attorney was causing too many delays and believed that the delays gave the State more time to build its case. Several times during the interviews, defendant stated that if the State had the evidence it claimed to possess, the outcome of his trial would be the same regardless of who represented him. He understood that trained attorneys were better equipped to handle his defense but stated that he wanted to represent himself so that his defense would be handled according to his wishes. Defendant acknowledged his anger control issues, but he told Dr. Killian that he would not be disruptive in court.

¶ 12    Dr. Killian diagnosed defendant with cocaine-induced hallucinations, which were in remission, and "probable" antisocial personality disorder. However, he stated that in his medical opinion, defendant did not suffer from any mental impairments that would affect his fitness to stand trial or his ability to knowingly and intelligently waive his right to counsel. Dr. Killian based his opinion on defendant's ability to remain focused during both lengthy interviews, his understanding of courtroom procedures, and his acknowledgment that his attorneys knew more that he did regarding legal strategies. Dr. Killian noted that defendant distrusted his attorneys but that his distrust did not rise to the level of paranoia. He concluded that defendant was fit to waive counsel and was competent to defend himself at trial.

¶ 13    At the hearing on defendant's motion to proceed *pro se*, defendant discussed his complaints regarding counsel's performance in detail. Counsel then defended his decisions and strategies. After hearing arguments by defendant and counsel, the trial court admonished defendant concerning his request to proceed *pro se*. The court informed defendant of the difficulties he would face and that he would not be able to raise his own ineffectiveness on appeal. The court also reminded defendant that he would not be able to change his mind once the trial started. Defendant stated that he understood and that he still wished to represent himself.

¶ 14    At the close of the hearing, the trial court found that counsel's performance was not lacking. The court indicated that it had reviewed Dr. Killian's and Dr. Hanlon's reports. The court noted that Dr. Hanlon stated that defendant suffered from "poor anger control" and some impairment of executive function. The court also noted that this case was unique because defendant was facing the death penalty in another case. The court then denied defendant's motion, stating:

> "Because of the danger in that subsequent case and the ease with which an uninitiated, inexperienced individual who doesn't know the law[,] because of the ease with which experienced counsel could draw out damaging information and/or admissions from you that might not even be important for this trial in front of a jury but which might very well be lethal to you in your capital murder case, I'm denying your request to represent yourself here."

¶ 15    After denying defendant's motion for self-representation, the trial court considered defense counsel's motions *in limine*. As the trial court stated its rulings, defendant yelled at the judge, claiming that he was "ignorant and repulsive, stupidity, ignorant and repulsive, stupidity, that was stupid." Defendant was removed from the courtroom.

¶ 16     At trial, defendant was found guilty on all counts. Defense counsel filed a motion for a new trial, which included several "*pro se*" claims of ineffective assistance. At the hearing, the court asked counsel whether he adopted the *pro se* issues as his own. Counsel stated that he was not adopting defendant's arguments as his own but that defendant would have raised the issues if he had been allowed to proceed *pro se*. The court denied the motion for a new trial without commenting on defendant's ineffective assistance of counsel claims. It then sentenced defendant to an aggregate term of seven years' imprisonment.

¶ 17                                    ANALYSIS

¶ 18     Defendant claims that the trial court abused its discretion in denying his request to proceed *pro se* because the court did not find, nor does the record indicate, that he suffered from a "severe mental illness" to the extent that he was not competent to conduct trial proceedings by himself, as required by the United States Supreme Court's decision in *Indiana v. Edwards*, 554 U.S. 164 (2008).

¶ 19     The state and federal constitutions guarantee a defendant the right to self-representation in the trial court. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. When a defendant elects to proceed *pro se*, the trial judge is required to admonish him of the nature of the charge, the possible penalties should he be convicted, and his right to be represented by counsel. Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

¶ 20     For many years, constitutional law required courts to allow a defendant to proceed *pro se* as long as the defendant was fit to stand trial and the judge was satisfied that the defendant understood the admonishments and was executing his or her waiver of counsel knowingly and voluntarily. See *People v. Lego*, 168 Ill. 2d 561 (1995). Recently, however, the United States Supreme Court reconsidered the constitutional provisions governing a defendant's right to self-representation in *Edwards*. *Edwards*, 554 U.S. at 174.

¶ 21     In *Edwards*, the defendant suffered from schizophrenia. He was initially found to be unfit for trial and was committed to a mental facility for several months on two separate occasions. He was eventually found to be fit and tried. During the trial proceedings, the defendant filed several *pro se* motions that contained incoherent and illogical arguments unrelated to the issues at trial, one of which included a request to proceed without the assistance of counsel. The trial court refused to allow the defendant to proceed *pro se*. *Edwards*, 554 U.S. at 170-71.

¶ 22     On appeal, the United States Supreme Court determined that a fit defendant could be denied the right of self-representation. *Edwards*, 554 U.S. at 175. The Court concluded that "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* [*v. United States*, 362 U.S. 402 (1960) (per curiam),] but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Id.* at 178.

¶ 23     In reaching its decision, the Court noted that, under *Faretta v. California*, 422 U.S. 806 (1975), the sixth and fourteenth amendments included a constitutional right to proceed without counsel when a criminal defendant voluntarily and intelligently elects to do so. *Edwards*, 554 U.S. at 170-71. The Court recognized the accused's choice to proceed without

an attorney, even though the decision may lead to his or her own detriment. However, the Court determined that the right to self-representation could be limited based on mental competency, noting that the right to proceed *pro se* would not affirm the dignity of a defendant who lacked the mental capacity to conduct his defense without the assistance of counsel. *Id.* at 178.

¶ 24    Subsequent cases applying *Edwards* have found that a defendant was properly denied the right to proceed *pro se* where (1) the defendant suffered from schizophrenia and refused to take his medication (*Ji v. State*, 316 S.W.3d 860 (Tex. Ct. App. 2010)), (2) the defendant suffered from a severe mental illness with paranoid ideations (*State v. McNeil*, 963 A.2d 358 (N.J. Super. Ct. App. Div. 2009)), and (3) the defendant was schizophrenic and a psychiatrist opined that he was incapable of controlling his outburst and would create "a spectacle" during trial (*State v. Lewis*, 785 N.W.2d 834 (Neb. 2010)).

¶ 25    Here, the record fails to show that defendant suffered from a "severe mental illness" that would affect his competency to conduct his own defense. Both Dr. Killian and Dr. Hanlon opined that defendant had cocaine-induced mental hallucinations in the past and exhibited antisocial behavior, but neither expert diagnosed a severe mental illness. Dr. Killian specifically found that defendant did not suffer from any mental impairment that would affect his fitness to stand trial or his ability to represent himself. Although Dr. Hanlon opined that defendant was incapable of self-representation, he noted that defendant was of average intelligence and within the normal range of executive function. He also refrained from diagnosing defendant as suffering from a specific mental illness. Defendant demonstrated to both Dr. Hanlon and Dr. Killian that he understood the charges against him, that he was knowledgeable regarding courtroom proceedings, and that he was coherent and capable of participating effectively in a conversation.

¶ 26    The defendant's courtroom demeanor also demonstrated his ability to represent himself. Defendant actively participated in defense counsel's arguments and motions. Defendant interjected when he realized that counsel filed several pretrial motions in an untimely manner, asking the court not to hold counsel's performance against him. In addition, defendant filed a well-written and logical motion to proceed *pro se*.

¶ 27    The only evidence of defendant's lack of control in this case occurred after the trial court denied his *pro se* request and defense counsel's pretrial motions. Although defendant's courtroom outburst was inappropriate, it appeared to be an isolated incident that transpired after the trial court's adverse rulings. It does not support the denial of defendant's constitutional right to forego the assistance of counsel. *Cf. Lewis*, 785 N.W.2d at 841 (*pro se* motion denied where defendant had extensive history of exhibiting bizarre behavior and becoming disruptive at pretrial hearings).

¶ 28    In this case, defendant's mental and emotional capabilities indicate that he can prepare his own defense. Although defendant may have difficulty controlling his emotions, he does not suffer from a severe mental illness that impairs his ability to conduct trial proceedings under the *Edwards* standard. Moreover, nothing in the record demonstrates that allowing defendant to proceed *pro se* would result in an unfair trial on these charges. Thus, the trial court erred in denying defendant the right to represent himself. We therefore remand the

cause for a new trial.

¶ 29    Based on our decision, we need not review defendant's posttrial claims of ineffective assistance.

¶ 30                              CONCLUSION

¶ 31    The judgment of the circuit court of Knox County is reversed, and the cause is remanded for a new trial.

¶ 32    Reversed and remanded.