720 F.2d 766
 OLIVER, Joseph Jude
v.
ZIMMERMAN, Charles, Superintendent and The Attorney General
of the State of Pennsylvania and District Attorney
of Berks County.
Appeal of Joseph Jude Oliver.
 No. 82-1747.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
Sept. 30, 1983.
Decided Nov. 3, 1983.
Certiorari Denied Feb. 21, 1984.
 
 See 104 S.Ct. 1302.
 Jeffrey L. Staniels, Asst. Defender, Defender Ass'n of Philadelphia, Federal Court Div., Philadelphia, Pa., for appellant.
 Joseph Jude Oliver, pro se.
 Paula M. Szortyka, Asst. Dist. Atty., Reading, Pa., for appellee.
 Before ALDISERT and BECKER, Circuit Judges, and COHILL, District Judge.*
 OPINION OF THE COURT
 PER CURIAM.
 
 
 1
 In this appeal from a denial of federal habeas corpus relief under 28 U.S.C. Sec. 2254, a state prisoner raises a number of questions relating to the conduct of his state trial where he was convicted of attempted burglary of a bank, criminal trespass, attempted theft and a summary offense of criminal mischief. At trial he insisted on proceeding pro se, as is his right, Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), Commonwealth v. Ritchey, 431 Pa. 269, 245 A.2d 446 (1968), although standby counsel was appointed for appellant and was present during the entire trial. We find no merit to his contentions.
 
 
 2
 Brown, an investigator supplied to Oliver, was subpoenaed by the defense but did not appear at trial. Oliver wanted him to testify that the lighting conditions in the bank were poor and thus identifications of Oliver as the burglar were suspect. He asked for a court order to compel his own witness' attendance which was denied. An alternative request was for a jury "view" of the scene. This, too, was denied. Oliver also contended that he was restricted from cross examining two of his own witnesses in an effort to show that they and not he were the burglars. Finally, in its summation to the jury, the prosecution characterized Oliver's questioning of police officers as amounting to an unconscious confession. Oliver charged that this constituted trial error. In a post-verdict motion, he attempted to raise several issues that he neither briefed nor argued at trial. This was prohibited by a local court rule.[1] In an effort to argue against the application of this rule, he requested a transcript of the trial to refresh his memory of what transpired. This was granted, but the transcript was not delivered until eight months after the post-verdict motion was denied. On appeal to the Pennsylvania appellate court, the judgment of conviction and sentence was affirmed.
 
 
 3
 In his habeas petition before the district court, Oliver argued, inter alia, that it was error for the state trial court to deny his request for a transcript to aid in the preparation of his post-verdict motions and to deny compulsory process against certain defense witnesses (presumably Brown). Oliver did not contend that the state trial court's restrictions on his ability to cross-examine his own witnesses was error, but he did argue that the prosecution's closing argument was improper. The petition was denied.
 
 
 4
 In appealing that denial now, he asserts that he did not get a full and fair hearing in the state court system and thus the district court should have held an evidentiary hearing on his claims. He points to three state trial errors: the prosecutor's closing statement implying that he had unconsciously confessed, denial of compulsory process against Brown or, in the alternative, a "view" of the scene, and denial of his ability to cross-examine his witnesses. He also argues that it was reversible error for the trial court to deny his request for a transcript in preparing his post-verdict motions.
 
 I.
 
 5
 We do not agree that an evidentiary hearing was necessary in the district court. Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). We now proceed to examine certain, but not all, of his substantive contentions. Primarily, Oliver has difficulty in proving the precise words spoken in the prosecutor's closing argument because Oliver, proceeding pro se, failed to request that a transcript be made of the final arguments to the jury. The general trial practice in Pennsylvania is that only testimony of witnesses and statements of the court are transcribed as of course. Opening and closing speeches are not transcribed unless requested by counsel, but any objection lodged during the course of such speeches is transcribed together with the judge's ruling thereon. In Commonwealth v. Musser, 172 Pa.Super. 44, 92 A.2d 270 (1952), the Pennsylvania Superior Court determined that counsel's closing address to the jury need not be stenographically recorded by the court reporter unless the trial judge so orders. The court upheld the trial judge's refusal to honor the defendants' request to order the court stenographer to transcribe the district attorney's arguments to the jury:
 
 
 6
 In refusing defendants' request the trial judge stated: "Counsel always has the right to put on the record anything objectionable contained in counsel's remarks to the jury." The action of the trial judge was not erroneous in this respect. See Commonwealth ex rel. Turk v. Ashe, 167 Pa.Super. 323, 74 A.2d 656; Act of May 1, 1907, P.L. 135, Sec. 2 as amended, Sec. 3, 17 P.S. Secs. 1802, 1804. No objection was made to any alleged improper remarks of the district attorney until the conclusion of his argument, and the alleged improper remarks were not placed on the record. Consequently the refusal of the trial judge to withdraw a juror is not reviewable. Commonwealth v. Kerr, 171 Pa.Super. 131, 89 A.2d 889. Furthermore, we find nothing objectionable or prejudicial in what the district attorney is supposed to have said.
 
 
 7
 Id. at 271, 89 A.2d 889. The holding in Musser was grounded on the court's construction of the Act of May 1, 1907, P.L. 135, Sec. 3, 17 Purd.Stat.Anno. Sec. 1804. That statute directs a court stenographer to record testimony, judges' charges, rulings, orders, and other matters which the judge may direct, and does not specifically require the arguments of litigants to be transcribed. Since Musser, the Pennsylvania legislature has granted the Pennsylvania Supreme Court authority to prescribe rules governing "[p]ractice, procedure and the conduct of all courts...." 42 Pa.Con.Stat.Anno. Sec. 1722(a)(1) (Purdon 1981), and has authorized repeal of the statute interpreted in Musser "to the extent [it] is inconsistent with rules" so prescribed. Id. However, since no such inconsistent rules have been prescribed, Pennsylvania courts have ruled that 17 Purd.Stat.Anno. Sec. 1804 is still in effect. Mansfield v. Lopez, 288 Pa.Super. 567, 432 A.2d 1016, 1018 (1981). Thus, Musser's holding that a trial judge may refuse to order the court stenographer to transcribe a litigant's oral address to the jury survives. This holding applies here a fortiori because Oliver made no request to have the argument transcribed.
 
 
 8
 Moreover, like the Pennsylvania Superior Court in the Musser case, "we find nothing objectionable or prejudicial in what the prosecutor is supposed to have said."[2] Indeed, this is a classic exemplification of the old adage "One who serves as his own counsel has a fool for a client." It is true that in this context, the Supreme Court has decided that one has a constitutional right to be a fool. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). But a defendant in a criminal proceeding who elects to reject the state's offer to provide counsel, and makes a knowing and intelligent waiver of this right, takes his chances. And Oliver did just that. In questioning witnesses who were on the scene in the bank, Oliver did not use the expression, "the burglar"; instead, he kept referring to "the defendant." Once this appeared in the record--and it did numerous times, see Appendix at 121a-22a, 127a, 132a, and 134a--the prosecutor had a clear right to comment on it. It is not prosecutorial misconduct to ask the jury to draw permissible inferences from anything that appears in the record, and the record is replete with questions asking specifically about the conduct of "the defendant" in the bank. A permissible inference is that he was talking about himself. It was not prosecutorial overreaching for the district attorney to ask the jury to draw that inference. Oliver cannot have it two ways--he cannot stubbornly reject the state's offer to provide counsel and then say he sustained a constitutional deprivation because he tried his case so stupidly.
 
 II.
 
 9
 wr-6] Where an indigent defendant is implicated in a criminal trial, the court must, on request, provide the defendant with a trial transcript or an equivalent thereof in order that he may properly prosecute an appeal. Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Similarly, courts must comply with such requests made by indigents bringing federal habeas petitions. U.S. ex rel. Cleveland v. Warden 544 F.2d 1200 (3d Cir.1976). Here Oliver was not denied a copy of the transcript, New Jersey State Prison, although he had to wait some eight months to obtain it. But Oliver's failure to have the trial transcript for preparation of post-trial motions before the state court does not rise to any constitutional deprivation. First, he had the transcript available for appellate review as required by Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Second, he has not demonstrated that he was precluded from raising any trial error by direct appeal or post-conviction review by reason of his failure to have a transcript at the post-trial motions stage of the proceedings. Engle v. Isaac 456 U.S. 107 (1981). Distilled to its essence, his argument asserting a constitutional deprivation is this: without a transcript he could not prepare a proper post-verdict motion regarding prosecutorial misconduct during the closing argument; without a proper post-verdict motion, he could not effect a proper appeal; therefore he was deprived of due process in being unable to effect a proper appeal to the state appellate courts. It is true that under Rule 1123(c)(3) Pa.R.Crim.Pro., upon a finding of guilt, the trial judge shall advise the defendant on the record "that only the grounds contained in [post-verdict] motions may be raised on appeal." Moreover, the Pennsylvania Supreme Court has ruled that "only those issues included in post-verdict motions will be considered preserved for appellate review." Commonwealth v. Gravely, 486 Pa. 194, 404 A.2d 1296, 1298 (1979). But here, Oliver did preserve for review the issue of prosecutorial misconduct during the closing argument. He set forth the issue in detail in p 21 of "Defendant's Motion to Arrest Judgment or to Grant a New Trial."[3] Equally important, he has not demonstrated that the Pennsylvania appellate courts denied him the right to present any other issue on appeal because it was not included in his particular post-verdict motion, a demonstration that is critical in order to present a prima facie case of federal due process deprivation in the context alleged here.
 
 Moreover, we have been reminded:
 
 10
 Clearly, there is no constitutional requirement that the United States provide an indigent with a transcript when that transcript is not necessary in order for him to prove his claim, or when his claim is frivolous on its face. Nor does the Constitution require that an indigent be furnished every possible legal tool, no matter how speculative its value, and no matter how devoid of assistance it may be, merely because a person of unlimited means might choose to waste his resources in a quest of that kind.
 
 
 11
 United States v. MacCollom, 426 U.S. 317, 330, 96 S.Ct. 2086, 2093, 48 L.Ed.2d 666 (1976) (Blackmun, J., concurring in judgment). Third, he had a broad opportunity to present contentions under the Pennsylvania Post Conviction Hearing Act, 42 Pa.Con.Stat.Anno. Secs. 9541-9551. This procedure provides a complete review of trial errors that have "not been finally litigated or waived." 42 Pa.Con.Stat.Anno. Sec. 9543(4). Moreover, Oliver has not argued that he was deprived of the opportunity to avail himself of state post-conviction relief on any stated issues. Accordingly, we apply the rule of Engle v. Isaac:
 
 
 12
 456 U.S. at 129, 102 S.Ct. at 1572.
 
 
 13
 [A]ny prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief.
 
 
 14
 Oliver has not demonstrated cause and actual prejudice.
 
 III.
 
 15
 We have carefully considered the other contentions raised by appellant, through counsel and in his pro se briefs, and find them to be without merit.[4]
 
 IV.
 
 16
 The judgment of the district court will be affirmed.
 
 
 17
 BECKER, Circuit Judge, concurring.
 
 
 18
 I do not share the confidence of the majority that this case does not involve an infringement of Oliver's fourteenth amendment rights. To the contrary, I think that there is a close and difficult question whether the closing argument of the prosecutor constituted prosecutorial overreaching in violation of Oliver's due process rights, or an infringement of his right to represent himself under Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).[1] However, I need not decide the constitutional question. Having reviewed the record, I am satisfied that even if there was a violation of Oliver's fourteenth amendment rights, the evidence of his guilt is so overwhelming that the violation did not amount to prejudice under Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Accordingly I concur in the judgment of the Court.
 
 
 
 *
 Honorable Maurice B. Cohill, Jr., United States District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 Issues not properly raised in a state court proceeding may not be reviewed by a federal habeas corpus court absent a showing of "cause" and "prejudice." Sumner v. Mata, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981); Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)
 
 
 [2]
 Id. The record in the instant case reconstructs the remarks of the prosecutor which Oliver described as improper:
 The prosecution argued that mental lapses were the defendant's downfall at the crime scene and that these mental lapses were readily observable in his conduct at trial. For example, the defendant, during cross-examination, would slip and ask questions of the officers such as whether they got a good look at his face while he was in the bank. Further, the defendant, in summation, argued that other individuals who arrived at the scene later were the real burglars who had thought up an alibi before going to the scene. The defendant said that a real burglar would have an alibi before going to the scene. The Commonwealth simply pointed out that if that analysis applied to other people at the scene, then surely it applied to the defendant also. The Commonwealth further submitted that the Defendant's statement as to the creation of an alibi prior to going to the scene was subconsciously perhaps, an explanation as to why his car was out of gas that night. It should be pointed out that the Commonwealth cautioned the jury that his summation was a presentation of its theory of the case and was not evidence and that the jury should reject those elements of the Commonwealth's theory which did not appear reasonable or did not coincide with their collective representations of the facts.
 Appellee's brief at 7-8.
 Appellee notes that the Commonwealth's argument is supported by various questions put to witnesses by the pro se appellant at trial, referring to activity within the bank:
 Did you see the defendant at the time you had the shotgun and you looked through the hole in the window [of the bank]?
 App. at 121a.
 Did you know whether he was armed? ... Was there anything protecting you between the defendant and yourself?
 Id. at 122a.
 What part of the defendant did you see after he ducked down [in the bank behind the counter]?
 Id. at 127a.
 Officer, looking through the window ... did you have a side view of the defendant?
 Id. at 134a.
 You looked inside the window and seen the defendant crouched down for a period of one minute. Were you able to observe whether he was wearing those gloves at that time?
 Id. at 132a.
 Were you ever able to see the defendant fully as you testified you seen him inside the bank, other than outside the bank, did you ever look at the defendant directly face on?
 Id. at 134a.
 The Pennsylvania Supreme Court has summarized relevant constitutional law teachings:
 The common thread running through the surveyed United States Supreme, Federal and State Courts' decisions which have dealt with the problem is that, while a transcript per se is not an absolute due process necessity, there must be at least an equivalent "picture" of what transpired below.
 Commonwealth v. Anderson, 441 Pa. 483, 272 A.2d 877, 882 (1971). Appellant has not demonstrated that there is not an equivalent picture of what transpired at trial.
 
 
 [3]
 Defendant was effectively denied and deprived of his 6th amendment right of self-representation when the prosecutor was permitted to unfairly and prejudicially comment to the jury during his closing summation before the jury, over two vigorous defense objections, about the manner in which defendant handled his case, expressing defendant's guilt through his manner and style of defense cross-examination and legal arguments inside the court-room before the jury; and, expressing a second time defendant's guilt by the way he used certain words and mannerisms during the defense summation before the jury; prosecutor telling the jury that defendant was actually reliving the crime subconsciously while he performed his legal task of summation before the jury. The court refused to correct the prosecutor's detrimental comments, over-ruling defense objections, and would not give curative instructions to the jury
 App. at 21a.
 
 
 [4]
 These contentions include his failure to obtain compulsory process to compel a defense witness to attend, unreasonably limited cross-examination, the "voucher" restriction in a cross-examination issue, that allowing eight depositors of the victim bank to serve on the accused trial jury deprived him of the right to have a fair and impartial jury, and that a state felony prosecution which is instituted by bill of information prepared by the office secretary of the prosecutor and merely "rubberstamped" with a signature impression is inherently prejudicial so as to violate basic and fundamental due process
 
 
 [1]
 I have difficulty in seeing how the defendant's questions, which are phrased just like questions that might have been asked by an attorney, can be characterized as admissions of guilt. Nor does it appear to be fair for the prosecutor to invite the jury to infer that Oliver was "talking about himself," as the majority puts it, when he referred to "the defendant" in questioning the police officers about the person they saw in the bank. The majority's position, if correct, might seriously undermine a defendant's Faretta rights
 Although there is no transcript of the closing arguments, the Commonwealth admits that it asked the jury to draw an inference that Oliver's cross examination somehow demonstrated his guilt. A transcript was therefore not necessary to establish that the challenged jury argument was made. However, Oliver's ability to argue that his cross-examination questions did not support the inference that the prosecutor asked the jury to draw would seem to depend upon his having a copy of the transcript, for I do not believe that anyone could be expected to brief and argue the import of the language and context of the many questions asked at a four-day trial from memory. If I am correct on this point, the failure to provide Oliver with a transcript may have prevented him from briefing and arguing his objection to the prosecutor's summation in his post-trial motions. And, because the Pennsylvania Superior Court will only address issues that were briefed and argued on post-trial motion, the failure to provide a transcript before hearing post-trial motions may have effectively denied Oliver his right to appeal on those issues. Although Oliver had a transcript in time to brief his appeal to the Superior Court, there is no reason to believe that the Superior Court departed from its usual practice so as to consider Oliver's argument concerning the prosecutor's summation. The trial court's decision was affirmed without opinion, and the Commonwealth's brief did not address the substance of Oliver's argument, but merely stated that the issue was "[n]ot briefed or argued below."
 One factor that militates against resolution of the constitutional issue in Oliver's favor is the trial judge's cautionary instruction in his charge that the jury "should be guided by the lawyer or the defendant's arguments only to the extent that they are supported by the evidence and insofar as they aid you in applying your own reason and common sense."