**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1494-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JANUS HINTON, a/k/a
JAMES J. HINTON, and
JAMES HINTON,

     Defendant-Appellant.

_____

Argued May 14, 2019 – Decided June 25, 2019

Before Judges Yannotti, Gilson and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 14-03-0514.

Kevin G. Byrnes, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Kevin G. Byrnes, on the brief).

Mary R. Juliano, Assistant Prosecutor, argued the cause for respondent (Christopher J. Gramiccioni, Monmouth

County Prosecutor, attorney; Mary R. Juliano, of counsel and on the brief).

PER CURIAM

Defendant was tried before a jury and found guilty of third-degree unlawful possession of a controlled dangerous substance (CDS) (heroin), in violation of N.J.S.A. 2C:35-10(a)(1). Defendant appeals from the judgment of conviction (JOC) dated November 2, 2017. We affirm.

I.

On March 20, 2014, a Monmouth County grand jury returned an indictment charging defendant with possession of CDS (heroin), in violation of N.J.S.A. 2C:35-10(a)(1), a crime of the third degree. Defendant was also charged in complaint 2013-000571-1335 with unlawful possession of CDS (marijuana), N.J.S.A. 2C:35-10(a)(4), and unlawful possession of drug paraphernalia, N.J.S.A. 2C:36-2. In addition, defendant received summonses for various traffic violations.

Defendant thereafter filed a motion to suppress evidence the police seized from his automobile and during a search at the police station. The trial court conducted an evidentiary hearing and denied the motion. Defendant was later tried before a jury on the heroin charge. Defendant waived his right to counsel, and represented himself at trial.

A-1494-17T1

Officer Thomas Holmstedt of the Neptune City Police Department (NCPD) testified that on December 31, 2013, at around 1:48 a.m., he was on patrol in his police cruiser and stopped defendant for speeding on Route 35. Holmstedt transported defendant to the Neptune Township Police Department. Defendant was taken to the processing room and searched. During the search, Holmstedt detected a hard object that came to a distinct point in defendant's groin area. The officer could not determine if the object was a weapon.

Holmstedt asked defendant what the object was, and defendant said it was his genitals, but Holmstedt did not believe defendant. Believing the object could be a weapon, the officer placed defendant in handcuffs for safety and the safety of the officers. Holmstedt brought defendant to a separate room for more privacy.

Holmstedt removed defendant's jeans and observed that defendant was wearing full-length, long-john, thermal-type pants underneath his jeans. He found sixty-four glassine bags of heroin in defendant's long-johns. Holmstedt secured the heroin, brought the contraband back to the NCPD, placed it in an evidence bag, and put it in the evidence locker.

On cross-examination, Holmstedt testified that when he stopped the vehicle, defendant did not have a driver's license and he ran a check on defendant

3

and his female passenger, who was seated in the front seat.  Holmstedt learned that there was an active arrest warrant for defendant's passenger.

When the passenger stepped out of the vehicle, Holmstedt observed some pieces of marijuana on the floor of the car, between the passenger seat and the passenger-side door.  Holmstedt arrested defendant for possession of marijuana, which Holmstedt found in the car after defendant consented to a search.

Defendant's trial began on June 7, 2016.  He appeared with standby counsel.  At the trial, the judge stated that the jury would decide only the count in the indictment charging defendant with possession of CDS (heroin), in violation of N.J.S.A. 2C:35-10(a)(1).  At the conclusion of the trial, the jury found defendant guilty of that charge.

After the jury was discharged, the judge addressed the remaining charges. He stated that prior to trial, the State agreed to dismiss the count charging defendant with possession of less than fifty grams of marijuana.  The judge dismissed that charge.  The judge then found defendant not guilty on the count charging defendant with possession of drug paraphernalia.  He determined that the State had offered no evidence to prove defendant's guilt on that count.  The judge did, however, find defendant guilty of driving while his driving privileges were suspended.

A-1494-17T1

The trial court sentenced defendant on October 27, 2017, and entered a JOC dated November 2, 2017. Defendant's appeal followed.

On appeal, defendant argues:

POINT I
THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT PERMITTED THE DEFENDANT TO REPRESENT HIMSELF EVEN THOUGH THE APPELLATE DIVISION PREVIOUSLY FOUND HE HAD "NO CONCEPT OF DEFENSE STRATEGY AND RELEVANT LEGAL PRINCIPLES."

POINT II
THE PROSECUTOR IMPROPERLY PERSUADED THE JURY THAT STATEMENTS MADE BY THE PRO SE DEFENDANT DURING QUESTIONING AND SUMMATION ARE INCULPATORY ADMISSIONS THAT CONSTITUTE PROOF OF HIS GUILT.

POINT III
THE DEFENDANT'S RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES AS GUARANTEED BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART[ICLE] I, PAR[AGRAPH] 7 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY THE WARRANTLESS SEARCH AND SEIZURE.

A. The Detention and the Plain View Observation of Marijuana During the Vehicle Stop Were Unlawful.

B. The Evidence Seized at the Police Station was the Result of an Illegal Strip Search, and It should be Suppressed.

A-1494-17T1

POINT IV
THE TRIAL COURT IMPROPERLY BALANCED THE AGGRAVATING AND MITIGATING FACTORS.

II.

Defendant first argues that the trial judge erred by finding that he had validly waived his right to counsel and allowing him to represent himself at trial. We disagree.

The United States Constitution and the New Jersey Constitution provide that a defendant in a criminal matter has the right to the assistance of counsel. U.S. Const. amend. VI; N.J. Const. art. 1, ¶ 10. A "corollary" to this right is "the defendant's right to represent himself." State v. King, 210 N.J. 2, 16 (2012) (citing Faretta v. California, 422 U.S. 806, 814 (1975)). Nevertheless, "[a] defendant's right of self-representation is not absolute[.]" Id. at 18 (citing State v. McNeil, 405 N.J. Super. 39, 51 (App. Div. 2009)).

A trial judge "has the duty to assure that a defendant's waiver of counsel is made 'knowingly and intelligently.'" Ibid. (quoting State v. Crisafi, 128 N.J. 499, 509 (1992)). "To fulfill this duty, a trial court must inform a defendant of the charges to be tried, the statutory defenses to those charges, and the potential sentencing exposure that accompanies those charges." Ibid. (citing Crisafi, 128 N.J. at 511).

"A court should also inform a defendant of the risks he faces and problems he may encounter." Ibid. (citing Crisafi, 128 N.J. at 511-12). Specifically, the judge should discuss with defendant:

> whether defendant will experience difficulty in separating his roles as defendant and counsel; whether defendant understands that he not only has the right not to testify, but also the right not to incriminate himself in any manner; whether he understands that he could make comments as counsel from which the jury might infer that he had knowledge of incriminating evidence (and the difficulty in avoiding such comments); and whether he fully understands that if he crosses the line separating counsel from witness, he may forfeit his right to remain silent and subject himself to cross-examination by the State.
>
> [Ibid. (quoting State v. Reddish, 181 N.J. 553, 594 (2004))].

"A trial court must also ensure that a defendant seeking to represent himself at trial is aware that in the event of a conviction, he will not be able to seek post-conviction relief alleging he had been deprived of the effective assistance of counsel." Id. at 19 (citing Reddish, 181 N.J. at 594). The judge also should "explain that a defendant representing himself remains as obligated to follow the applicable rules of procedure and evidence as would a licensed attorney." Id. at 18 (citing Crisafi, 128 N.J. at 512).

7

Finally, "a court should stress the difficulties inherent in proceeding without an attorney and 'specifically advise the defendants that it would be unwise not to accept the assistance of counsel.'" Ibid. (quoting Crisafi, 128 N.J. at 512). "[S]uch a searching examination" is required to ensure that the defendant's decision to proceed pro se is made "with his eyes open." Id. at 20 (citing Crisafi, 128 N.J. at 513).

Here, the record shows that at a hearing conducted on March 2, 2015, the judge informed defendant of the charges against him, the elements the State had to prove to prosecute each charge successfully, and the State's evidentiary burdens of proof. The judge informed defendant of his defenses to those charges, questioned him about his understanding of those defenses, and explained the sentences he could face if found guilty.

The judge also explained the potential problems and risks inherent in self-representation. The judge asked defendant whether he understood "the difficulties of separating someone as a defendant and someone as a lawyer," to which defendant replied that he understood. The judge asked defendant whether he understood that he had the right not to testify, and that if he did, he would be subject to cross-examination. Defendant replied that he understood.

8

The judge also asked defendant whether he understood that by representing himself, he could make incriminating statements while examining witnesses. Defendant again stated he understood. The judge then asked defendant whether he understood that by representing himself, he would not be able to argue in a petition for post-conviction relief (PCR) that he did not have the effective assistance of counsel. Defendant replied that he understood.

The judge further explained that at trial, defendant would be responsible for presenting his defense, required to follow "the applicable rules of procedure and evidence," and required to "handle [himself] just like a lawyer would." In addition, the judge told defendant that he thought self-representation was "not a good idea" and reminded him that "[t]here are many difficulties in representing yourself." The judge found that, even so, defendant could elect to represent himself and stated, "I can't stop you from representing yourself if you want to." Defendant insisted on representing himself.

The judge then questioned defendant about his education, knowledge of the law, and understanding of how criminal trials are conducted. The judge asked defendant whether he had any questions about representing himself, and defendant replied that he did not. At the end of the hearing, the judge found

A-1494-17T1

defendant had validly waived his right to counsel, and granted defendant permission to represent himself at trial.

On appeal, defendant argues that there are a "multitude of problems" with the waiver of his right to counsel. He contends that in a prior case, this court filed an opinion stating that he did not have the requisite legal skills and abilities to represent himself in a criminal trial. He argues there is no evidence he acquired such skills in the years since the trial in that earlier case.

In State v. Hinton, A-6531-06 (App. Div. Mar. 18, 2009) (slip op. at 3), the court addressed defendant's contention that the trial judge erred by denying him the opportunity to represent himself during his criminal trial. The court held that defendant did not make a request in the trial court to defend himself, and found that his statement during trial about his desire to fire his attorney "was simply a passing thought based on a temporary disagreement with his attorney." Id. (slip op. at 5).

The court also observed that "[the trial judge] was extraordinarily patient with defendant, who clearly had no concept of effective defense strategy or relevant legal principles, and frequently interrupted the pre-trial proceedings with questions and statements." Ibid. The court's passing comment on

defendant's knowledge of defense strategy and the applicable legal principles was not, however, binding on the trial judge in this case.

Defendant further argues that the trial judge erred by failing to undertake the searching inquiry required to determine if he had validly waived his right to counsel. He contends the judge failed to inform him that the lack of knowledge of the law may impair his ability to defend himself. He also claims the court did not inform him that by waiving his right to counsel and representing himself at trial, he would be waiving any claim of ineffective assistance of counsel that could be raised in a PCR petition.

The record does not support defendant's argument. As the record shows, the judge conducted a hearing on defendant's application to waive his right to counsel, and conducted the "searching examination" required to ensure that defendant made his decision to waive counsel "with his eyes open." King, 210 N.J. at 20 (citing Crisafi, 128 N.J. at 513).

As we have explained, the judge informed defendant of the problems and risks in self-representation. The judge told defendant he was not required to testify on his own behalf, and warned defendant that he could make incriminating statements while examining witnesses. The judge also told

defendant that he would be waiving any claim of ineffective assistance of counsel if he waived his right to counsel and represented himself at trial.

We therefore reject defendant's contention that the trial judge erred by allowing defendant to represent himself at trial.

III.

Defendant further argues that the assistant prosecutor improperly argued to the jury that the statements he made during his examination of certain witnesses were admissions the jury could consider. In her closing argument, the prosecutor stated:

> How do we know that the defendant acted knowingly or purposely in possessing . . . the heroin? Well, knowingly or purposely is a state of mind, and that can be drawn from inferences; from inferences from facts, from inferences from actions, from inferences from words. And here let's look at the inferences that can be made.
>
> The inference can be made from where the heroin was found. It was found in the defendant's long-johns. Clearly the defendant had to place that heroin there. It was in his long-johns.
>
> Now, the defendant also, through his information and when he was questioning the witnesses, acknowledged his familiarity with drugs. He referenced the heroin as "the dope," "the dope." He said that multiple times when he was questioning the chemist. So I think we can infer from the defendant's words referring to this as dope, and from where it was found that he knowingly

12

A-1494-17T1

possessed it. All of the elements of an unlawful possession of heroin have been met in this case.

On appeal, defendant argues that the prosecutor improperly attempted to persuade the jury to draw inferences from questions he asked while cross-examining a witness. Defendant contends that his questions were not made under oath and therefore, his statements were "not evidence."

It is well-established that "prosecutorial misconduct is not grounds for reversal of a criminal conviction unless the conduct was so egregious as to deprive defendant of a fair trial." State v. Wakefield, 190 N.J. 397, 437-38 (2007) (quoting State v. Timmendequas (I), 161 N.J. 515, 575-76 (1999)). To warrant a new trial, the prosecutor's conduct must be "clearly and unmistakably improper" and "must have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense." Id. at 438 (quoting State v. Papasavvas (I), 163 N.J. 565, 625 (2000)).

When reviewing a prosecutor's alleged improper remarks, we consider "whether defense counsel made a timely and proper objection, whether the remark[s] [were] withdrawn promptly, and whether the court ordered the remarks stricken from the record and instructed the jury to disregard them." Ibid. (quoting Papassavas (I), 163 N.J. at 625). Here, defendant did not object to the prosecutor's remarks.

The State recognizes that generally, a prosecutor may not comment on a non-testifying defendant's demeanor at trial. See State v. Adames, 409 N.J. Super. 40, 57-61 (App. Div. 2009). The State points out, however, that a different situation is present when, as in this case, a self-represented defendant questions a witness. When doing so, the defendant may communicate some relevant, incriminating information.

The Court of Appeals for the Third Circuit addressed this issue in Oliver v. Zimmerman, 720 F.2d 766 (3d Cir. 1983). In that case, the defendant was charged with attempted burglary of a bank and decided to represent himself at his criminal trial. Id. at 767. While cross-examining a witness, the defendant inadvertently referred to himself as the alleged burglar. Id. at 770. During summation, the government's attorney asked the jury to draw an inference of the defendant's guilt based on the questions the defendant asked the witness during trial. Id. at 768, 770. The jury found the defendant guilty. Id. at 767, 770.

On appeal, the court rejected the defendant's argument that the prosecutor had improperly commented on his questions during summation. Id. at 770. The court stated, "[i]t is not prosecutorial misconduct to ask the jury to draw permissible inferences from anything that appears in the record." Ibid. The

14

court reasoned that, once the defendant's question appeared in the record, "the prosecutor had a clear right to comment on it."  Ibid.

The court's decision in Oliver is not binding, but its reasoning supports the conclusion that the prosecutor's comments in this case were not "clearly and unmistakably improper."  Wakefield, 190 N.J. at 438 (citing Papassavas (I), 163 N.J. at 625).  Here, defendant's questions to the witness were part of the record, and the prosecutor did not act improperly by asking the jury to consider those statements when determining whether defendant was guilty of the charged offense.

However, even if the prosecutor erred by commenting on defendant's questions in her summation, the error did not "substantially prejudice[] defendant's fundamental right to have a jury fairly evaluate the merits of his defense."  Ibid.  Here, the State presented overwhelming evidence from which the jury could find beyond a reasonable doubt that defendant "knowingly or purposely" possessed the heroin, in violation of N.J.S.A. 2C:35-10(a)(1).

In light of that evidence, the prosecutor's comment that defendant had a familiarity with drugs, as shown by his reference to "dope," was not likely to prejudice defendant's right to have the jury fairly evaluate the evidence.

A-1494-17T1

Wakefield, 190 N.J. at 438. We therefore reject defendant's contention that the prosecutor's comments deprived him of his right to a fair trial.

## IV.

Next, defendant argues that the trial judge erred by denying his motion to suppress the evidence obtained from the vehicle and in the search of defendant at the police station. Again, we disagree.

A. Testimony at Suppression Hearing

At the hearing on defendant's suppression motion, Holmstedt testified that on December 31, 2013, he was patrolling on Route 35 in a marked police cruiser when he observed a white Ford driving forty-seven miles per hour in a thirty-five mile per-hour speed zone. Holmstedt pulled the vehicle over and turned on his cruiser's motor vehicle recording (MVR) system to record the stop.

Holmstedt approached the vehicle and asked the driver, who was later identified as defendant, to produce his driver's license. Defendant told the officer he did not have a driver's license in his possession. A female passenger was seated in the front passenger seat of the car. Defendant and his passenger verbally provided their identification information to Holmstedt. The officer returned to his cruiser and called the department's dispatch officer to verify the information and check for outstanding warrants.

A-1494-17T1

The dispatch officer informed Holmstedt that there was an outstanding warrant for the female passenger's arrest. Holmstedt exited his cruiser, approached the passenger side of defendant's car, and began speaking with defendant and his passenger. He told them about the warrant. Holmstedt asked the passenger to step out of the vehicle and placed her under arrest.

Defendant questioned Holmstedt about how he could later contact his passenger. When Holmstedt looked back at defendant to answer his question, he observed pieces of marijuana on the floor of the vehicle between the passenger seat and the open passenger-side door. Holmstedt secured the passenger, and then returned to the white Ford. He asked defendant to step out of the car, and defendant complied.

Holmstedt led defendant to the sidewalk and asked him for consent to search his vehicle. Defendant agreed and executed a consent-to-search form. Holmstedt began his search from the front driver's side door and worked his way through the vehicle. The officer discovered pieces of marijuana "throughout the vehicle" and secured them in an evidence bag.

Holmstedt arrested defendant, placed him in the back seat of the police vehicle, and brought him to the Neptune Township police station. In the station's processing area, Holmstedt searched defendant "in accordance with [the police

department's] policy." While patting defendant down, Holmstedt felt a sharp object in the groin region of defendant's pants.

Holmstedt asked defendant what the object was, and defendant stated it was his genitals. Suspecting defendant was hiding a weapon or other contraband, Holmstedt placed defendant in handcuffs and, accompanied by another officer, escorted defendant to a separate room for privacy.

Holmstedt removed defendant's jeans. Defendant was wearing thermal, long-johns under his jeans. Holmstedt discovered sixty-four packages in the front compartment of defendant's long-johns. The packages contained heroin. Defendant then told Holmstedt he had another bag hidden in his socks. That bag contained marijuana.

B. Detention and Evidence Seized During Motor Vehicle Stop

On appeal, defendant argues that "there was an unreasonable lapse of time between the time of the initial stop and the time of the plain view observation" and that "the duration of the stop far exceeded the time required to accomplish the purpose of the stop," which defendant contends was "to issue a motor vehicle summons." He argues that this roadside detention was illegal and that "[a]ll seized evidence following this illegality should be suppressed."

18                                                                    A-1494-17T1

Defendant did not raise this argument in the trial court. Therefore, the court did not have the opportunity to address this contention. Nevertheless, the record does not support defendant's contention that there was an unreasonable lapse of time between the officer's initial stop of the vehicle and his observation of the marijuana, which was in plain view.

"During an otherwise lawful traffic stop, a police officer may inquire 'into matters unrelated to the justification for the traffic stop.'" State v. Dunbar, 229 N.J. 521, 533 (2017) (first quoting Arizona v. Johnson, 555 U.S. 323, 333 (2009); then citing State v. Dickey, 152 N.J. 468, 479 (1998)). The officer may make "ordinary inquiries," such as "checking the driver's license, verifying whether the driver has any outstanding warrants, and inspecting the automobile's registration and proof of insurance." Ibid. (quoting Rodriguez v. United States, 575 U.S. ___, 135 S. Ct. 1609, 1615 (2015) (quotations omitted)).

If the stop and its ordinary inquiries lead to "suspicions unrelated to the traffic offense," the officer may expand the investigation to "satisfy those suspicions." Ibid. (quoting Dickey, 152 N.J. at 479-80). The officer cannot, however, conduct an incidental investigation in a manner that "prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." Id. at 533-34 (citing Rodriguez, 575 U.S. at ___, 135 S. Ct. at 1615;

Dickey, 152 N.J. at 476-79). Therefore, a traffic stop "that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Id. at 534 (citing Illinois v. Caballes, 543 U.S. 405, 407 (2005)); see also State v. Coles, 218 N.J. 322, 344 (2014).

Here, it is undisputed that Holmstedt made a valid stop of defendant's car for a motor vehicle violation. The trial court noted that the warrant and credentials check took longer than usual, but this was because Holmstedt had to contact the dispatch officer and confirm defendant's identity using only the information defendant provided verbally. The identification check took about "five to ten minutes."

Furthermore, Holmstedt was authorized to verify the female passenger's identification information and check for outstanding warrants. See State v. Sloane, 193 N.J. 423, 426, 439 (2008) (finding that, after stopping the motor vehicle, the police officer was entitled to search both the driver and the passenger for outstanding warrants using the National Crime Information Center (NCIC) database).

Thus, the record supports the trial court's finding that Holmstedt did not unreasonably delay the traffic stop. As the record shows, the officer made

"ordinary inquiries" that were incidental to the otherwise lawful traffic stop. See Dunbar, 229 N.J. at 533. Moreover, the officer properly approached defendant's passenger's door and ordered the passenger out of the vehicle after confirming the existence of a warrant for her arrest.

Holmstedt was therefore lawfully in the viewing area when he observed the marijuana in plain view. Holmstedt validly seized the marijuana. See State v. Johnson, 171 N.J. 192, 206 (2002) (citing Texas v. Brown, 460 U.S. 730, 737-40 (1983)).

C. Evidence Seized During Search at Police Station

Defendant further argues that Holmstedt's search at the police station was a "strip search," as that term is defined in the "Strip Search Act" (the Act), N.J.S.A. 2A:161A-1 to -10. He contends the State failed to prove that the search complied with the requirements set forth by the Act. He therefore contends the heroin discovered during the search must be suppressed.

N.J.S.A. 2A:161A-3(a) defines a "strip search" as "the removal or rearrangement of clothing for the purpose of visual inspection of the person's undergarments, buttocks, anus, genitals, or breasts." Ibid. In the Act, the Legislature did not define the term "undergarments." Therefore, we must

21

ascribe to that term its ordinary meaning.  See State v. Twiggs, 233 N.J. 513, 532 (2018) (citing Paff v. Galloway Twp., 229 N.J. 340, 353 (2017)).

In State v. Evans, 235 N.J. 125, 129 (2018), the Court determined that the police had conducted a strip search when an officer brought the defendant into another room with another officer present, unbuckled the defendant's pants, reached into his jeans, and found plastic bags "[b]etween [the defendant's] pants and underwear."  The Court found there was a strip search even though the officers had not removed defendant's underwear and his private parts were not exposed.  Ibid.

We are convinced, however, that there is sufficient credible evidence in the record to support the trial court's finding that Holmstedt did not perform a strip search when he removed defendant's jeans.  Holmstedt performed a visual inspection of defendant's long-johns, which would ordinarily be considered "undergarments."  But, the evidence reveals that defendant was wearing boxer shorts beneath the long-johns.  Thus, in this case, defendant's long-johns were a second layer of outerwear, not his "undergarments."  We therefore conclude that the court correctly determined that Holmstedt did not perform a strip search.

A-1494-17T1

Even if we were to conclude that Holmstedt's removal of defendant's jeans constituted a strip search, the search was permissible.  The Act provides in relevant part that a person shall not be subjected to a strip search unless:

> a. The search is authorized by a warrant or consent;
>
> b. The search is based on probable cause that a weapon, controlled dangerous substance, . . . or evidence of a crime will be found and a recognized exception to the warrant requirement exists; or
>
> c. [(1)] The person is lawfully confined in a municipal detention facility or an adult county correctional facility and [(2)] the search is based on a reasonable suspicion that a weapon, controlled dangerous substance . . . or contraband . . . will be found, and [(3)] the search is authorized pursuant to regulations promulgated by the Commissioner of the Department of Corrections.
>
> [N.J.S.A. 2A:161A-1.]

Here, the judge found that the search complied with the requirements imposed by N.J.S.A. 2A:161A-1(c).  The judge noted that the officer had performed the search at police headquarters, which was a municipal detention facility.  The judge also found that before conducting the search, Holmstedt had sufficient reasonable suspicion to believe that defendant was in possession of a weapon or CDS.

23                                                                    A-1494-17T1

Defendant argues, however, that the State failed to demonstrate that the officer conducted the strip search in compliance with regulations promulgated by the Commissioner of the Department of Corrections (DOC), as required by N.J.S.A. 2A:161A-1(c). The judge did not address this issue in his opinion. Even so, the record supports the conclusion that if Holmstedt conducted a strip search, he did so in accordance with the DOC's regulations.

The DOC regulations provide in pertinent part that:

> (a) A person who has been detained or arrested for commission of an offense other than a crime and who is confined in a municipal detention facility shall not be subject to a strip search unless:
>
> 1. The search is authorized by a warrant or valid documented consent;
>
> 2. A recognized exception to the warrant requirement exists and the search is based on probable cause that a weapon, controlled dangerous substance, contraband or evidence of a crime will be found and the custody staff member authorized to conduct the strip search has obtained the authorization of the custody staff supervisor in charge;
>
> 3. The person is lawfully confined and the search is based on a reasonable suspicion that a weapon, controlled dangerous substance, contraband or evidence of a crime will be found and the custody staff member authorized to conduct the strip search has obtained the authorization of the custody staff supervisor in charge; or

4. <u>Exigent circumstances prevent obtaining a search warrant or authorization of the custody staff supervisor in charge and such exigent circumstances require custody staff to conduct a strip search in order to take immediate action for purposes of preventing bodily harm to the officer, person or others</u>.

[N.J.A.C. 10A:34-3.4(a) (emphases added)].

Here, the record shows that due to "[e]xigent circumstances," Holmstedt was authorized to conduct an immediate strip search "for purposes of preventing bodily harm" to himself or others. <u>See</u> N.J.A.C. 10A:34-3.4(a)(4). As we have explained, Holmstedt believed defendant was concealing a weapon underneath his pants and that defendant presented an immediate threat of bodily harm to himself and other officers present at the time.

Accordingly, we conclude exigent circumstances prevented Holmstedt from obtaining the search warrant to conduct the search of defendant's person. The circumstances required the officer to conduct a search "in order to take immediate action" to prevent bodily harm to the officer and others present at the time. <u>Ibid.</u>

V.

Defendant also challenges his sentence. Here, the sentencing judge granted the State's motion for imposition of an extended term as a persistent offender pursuant to N.J.S.A. 2C:44-3(a). The judge found aggravating factors

three, N.J.S.A. 2C:44-1(a)(3) (risk that defendant will re-offend); six, N.J.S.A. 2C:44-1(a)(6) (extent of defendant's prior criminal record and the seriousness of the offenses of which he has been convicted); and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others from violating the law). The judge found no mitigating factors.

The judge decided not to sentence defendant within the range of extended-term sentences, N.J.S.A. 2C:43-7(a)(4), or impose a period of parole ineligibility, N.J.S.A. 2C:43-6(b). Instead, the judge sentenced defendant to a flat, four-year custodial term. The judge ordered a six-month suspension of defendant's driving privileges, and imposed appropriate fees and penalties. In addition, the judge dismissed the other charges and motor vehicle violations.

On appeal, defendant argues that the sentencing judge failed to properly weigh the aggravating and mitigating factors. He contends the judge erred by finding he is at risk of committing another crime. He asserts this finding is based on this conviction and his prior record. He states that there is no evidence he is at risk to commit another offense.

Defendant also argues that while the judge cited the need to deter him and others from violating the law, this is a factor that applies in all cases and it should have been accorded little weight. In addition, defendant contends the

judge erred by failing to find mitigating factors one, N.J.S.A. 2C:44-1(b)(1) (defendant's conduct did not cause injury or harm); and two, N.J.S.A. 2C:44-1(b)(2) (defendant did not contemplate that his conduct would cause harm).

Defendant therefore argues that his sentence is excessive. He contends that instead of sentencing him to a flat, four-year term, the judge should have imposed a flat, three-year prison term. We disagree.

We review the sentence imposed in a criminal matter under an abuse of discretion standard. State v. Jones, 232 N.J. 308, 318 (2018). In doing so, we consider whether: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were . . . 'based upon competent credible evidence in the record'; [and] (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (third alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

"An appellate court is bound to affirm a sentence, even if it would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." State v. O'Donnell, 117 N.J. 210, 215 (1989) (first citing State v. Jarbath, 114 N.J. 394, 400-01 (1989); then citing Roth, 95

27

N.J. at 364-65). Although the law "does not require that trial courts explicitly reject every mitigating factor argued to the court, [trial courts are encouraged] to address each factor raised, even if only briefly." State v. Bieniek, 200 N.J. 601, 609 (2010).

Here, the record shows the judge followed the sentencing guidelines, and there is sufficient credible evidence to support the judge's findings of aggravating factors, and the judge's conclusion that no mitigating factors applied. Moreover, the record shows that the judge properly weighed the aggravating and non-existing mitigating factors. We conclude the sentence imposed here is not an abuse of discretion.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION