**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-4232, 16-4237, 16-4239, 16-4252,
16-4267, 16-4302, 16-4321 & 16-4381
_____

UNITED STATES OF AMERICA

v.

MARIO OLIVA,
also known as Zorro,

Appellant in No. 16-4232

SANTOS REYES-VILLATORO,
also known as Mousey,

Appellant in No. 16-4237

ESAU RAMIREZ,
also known as Panda

Appellant in No. 16-4239

ROBERTO CONTRERAS,
also known as Demonio,

Appellant in No. 16-4252

JULIAN MOZ-AGUILAR,
also known as Humilde,
also known as Demente,
also known as Tio Felito,

Appellant in No. 16-4267

HUGO PALENCIA,
a/k/a Taliban,

Appellant in No. 16-4302

JOSE GARCIA,
a/k/a Chucky
a/k/a Diabolico,

Appellant in No. 16-4321

CRUZ FLORES,
a/k/a Bruja,

Appellant in No. 16-4381

_____

On Appeal from the United States District Court
for the District of New Jersey
(D. C.  Criminal Nos. 2-13-cr-00615-002/001/008/003/004/005/006/012)
District Court Judge: Honorable Stanley R. Chesler

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) on
September 27, 2018

_____

Before: SMITH, *Chief Judge*, McKEE and RESTREPO, *Circuit Judges*

(Opinion filed: October 16, 2019)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not constitute binding precedent.

McKEE, *Circuit Judge*.

In this consolidated appeal, Mario Oliva and seven other defendants appeal various aspects of their convictions and sentences for criminal activity arising from their participation in a faction of La Mara Salvatrucha ("MS-13") gang in Plainfield, New Jersey.[1] For the reasons set for the below, we will affirm the convictions and sentences of all defendants.

We will review each claim of error in turn, combining claims where appropriate.[2]

## I.

### A. Sufficiency of the Evidence for the Racketeering Conspiracy Convictions of Oliva, Palencia, and Ramirez.[3]

"In order to be guilty of a RICO conspiracy, a defendant must either agree to commit two [statutorily defined] predicate acts or agree to participate in the conduct of

---

[1] The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

[2] Five of the Appellants included a blanket adoption of all of their co-appellants' arguments to the extent applicable to them. *See* Oliva Br. at 20; Ramirez Br. at 16; Garcia Br. at 16; Palencia Br. at 2; Reyes-Villatoro Br. at 2. Because a blanket adoption of all issues raised by all of one's co-appellants, without any specification of the discrete issues to be adopted, fails to satisfy Fed. R. App. P. 28(a)(5)'s directive to identify the specific issues for review, *see United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990), the "referenced" arguments are waived to the extent an Appellant did not identify the specific argument that he was adopting.

[3] We review challenges to the sufficiency of the evidence *de novo* and "ask specifically whether there is substantial evidence that, when viewed in the light most favorable to the government, would allow a rational trier of fact to convict." *United States v. Lee*, 612 F.3d 170, 178 (3d Cir. 2010) (internal citations omitted). We review unpreserved sufficiency claims for plain error. *Id.*

the enterprise with the knowledge and intent that other members of the conspiracy would commit at least two such predicate acts in furtherance of the enterprise."[4]

### 1. Oliva

Oliva claims that there was insufficient evidence to convict him of the RICO conspiracy charge because the government only proved his involvement with the murder of Jessica Montoya. Oliva Br. at 18. He thus concedes his participation in one predicate act but argues that no other predicate acts were proven. *Id*. at 18-20. The record demonstrates otherwise. Witnesses testified that: (1) Oliva was one of three people with authority to hand out "missions" to kill for the gang;[5] (2) Oliva ordered Chicas-Ortiz and Contreras to kill a member of the Blood gang;[6] (3) Oliva relayed Reyes-Villatoro's plan to kill Latin Kings to other MS-13 members;[7] and (4) Oliva was present and armed during the hunt for Chavalas that led to the murder of Christian Tigsi.[8] This evidence was sufficient to allow the jury to conclude that Olivia participated in a statutorily defined predicate act in addition to the murder of Jessica Montoya.

### 2. Palencia

In raising his unpreserved sufficiency claim, Palencia argues that of the five predicate acts charged against him, the record evidence only arguably supports his personal involvement or endorsement of one predicate act – the murder of Spencer

---

[4] *United States v. Nguyen*, 255 F.3d 1335, 1341 (11th Cir. 2001).
[5] A1362.
[6] A1365-66.
[7] A1400-03.
[8] A1441-45.

Cadogan.[9] According to Palencia, the only other incident the government could have feasibly relied upon as the second predicate act was the attempted murder of Christian Garcia, which the government never actually argued constituted a predicate act.[10] However, there were at least three other acts that the jury could properly have found constituted additional predicate acts. There was testimony that Palencia pulled out a gun, aimed it at two MS-13 gang targets, Carmelo Soto and Kevin Veliz, and fired multiple times.[11] There was also testimony that Palencia plotted the murder of detective Edwin Maldonado.[12] Finally, the record demonstrates that Palencia had a gun and was present during the attempted attack on Mario and Jose Abarca.[13]

### 3. Ramirez

Ramirez claims that the record does not demonstrate that he was anything more than "merely present" for numerous gang-related acts. However, there was evidence that Ramirez and Franklin Mejia actively discussed the details of their plot to murder Detective Maldonado and burn down his mother's house, as well as murder witnesses.[14] Ramirez was also an active participant in the extortion of "retired" MS-13 gang member Leo Martinez. Ramirez went to collect the payment and threatened to kill Martinez's siblings if he did not pay.[15]

---

[9] Palencia Br. at 52-53.
[10] *Id*. at 53-55.
[11] A3178, 3728, 3585, 3589.
[12] A5656-60.
[13] A7750-53.
[14] A8511–16; A9549–52, A9581–82, 9592.
[15] A8126–28, 8131–32.

Ramirez also challenges the sufficiency of the evidence for his murder-in-aid-of racketeering charge. But there is testimony that Ramirez was one of two people who identified the witnesses to be killed.[16]

### B. Contreras' Challenge to the Sufficiency of the Evidence for Being an Accessory After the Fact.

There was ample circumstantial evidence that Contreras knew Montoya was killed in aid of racketeering. "[A]ll the elements of a conspiracy charge, including intent and knowledge of illicit purpose, 'may be proven entirely by circumstantial evidence.'"[17] At least three different chains of evidence could have been credited by the jury to show Contreras' knowledge. For example, Contreras took over as the leader of the MS-13 gang after Oliva fled to Maryland. In that leadership role, he informed others in the gang that Montoya was killed because of orders from higher-ups in the gang.[18] Chicas-Ortiz also testified that Contreras discussed Montoya's murder while helping him flee to Maryland,[19] and Contreras and Oliva made several calls to one another just before Oliva drove Montoya to be killed.[20]

---

[16] A8867–76, A9581–82, 9592.
[17] *United States v. Lore*, 430 F.3d 190, 204 (3d. Cir 2005) (quoting *United States v. Schramm*, 75 F.3d 156, 159 (3d Cir. 1996)).
[18] A5049-50.
[19] A1496-97.
[20] A2379-80.

### C. The District Court did not Abuse its Discretion in Declining to Sever the Trial of Cruz Flores.[21]

To prevail on this claim, Cruz Flores must show that there was "a serious risk that a joint trial would compromise a specific trial right" of his "or prevent the jury from making a reliable judgment about guilt or innocence."[22] He also must show that the denial resulted in "clear and substantial prejudice resulting in a manifestly unfair trial."[23] Flores has not done so. He does not claim there was insufficient evidence to convict him of murdering Julio Matute.[24] He does not identify any other evidence that would not have been admitted had his trial been severed. Moreover, as a member of a RICO enterprise, evidence of the enterprise's actions was directly relevant to the charges against him. The district court issued appropriate limiting instructions each time he requested them.[25]

---

[21] We review the denial of a motion to sever to prevent prejudice pursuant to Fed. R. Crim. P. 14 for an abuse of discretion. *United States v. Walker*, 657 F.3d 160, 170 (3d Cir. 2011). Even if the district court abused its discretion, "reversal is not required absent a demonstration of clear and substantial prejudice resulting in a manifestly unfair trial." *United States v. Reyeros*, 537 F.3d 270, 286 (3d Cir. 2008) (internal citations omitted).

[22] *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

[23] *United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005) (internal citations omitted). "[A] defendant is not entitled to a severance merely because evidence against a co-defendant is more damaging than the evidence against the moving party." *Lore*, 430 F.3d at 205.

[24] *See* Flores Br. at 8-21; A7315-27.

[25] A2802, 3786, 5324, 5557, 10112.

7

**D. Moz-Aguilar's Challenge to the District Court's Finding that Murder in Aid of Racketeering is a Crime of Violence Under § 924(c).[26]**

Moz-Aguilar argues that the district court erred in concluding that murder in the aid of racketeering qualified as a crime of violence under 18 U.S.C. § 924(c)(1)(A). The claim is frivolous. The statute makes it illegal for a "person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm[.]" Section 924(c)(3), in turn, defines a crime of violence as "a felony" that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" (the elements clause); or, "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," (the residual clause).[27]

Moz-Aguilar was convicted under 18 U.S.C. § 924(c) of discharging a firearm during a "crime of violence," and under § 924(j) for causing death in the course of doing so. Those charges arose from the murder of Christian Tigsi. "[T]he determination of whether a particular crime qualifies as a 'crime of violence' under § 924(c) depends upon both the predicate offense . . . and the contemporaneous conviction under § 924(c)."[28] Therefore, we have to "look at all the offenses before the jury to the extent that these offenses shed light on whether physical force was used, attempted, or threatened in

---

[26] "We exercise plenary review over questions of law, such as whether a crime is a crime of violence." *United States v. Stinson*, 592 F.3d 460, 462 n.1 (3d Cir. 2010).
[27] 18 U.S.C. § 924(c)(3).
[28] *United States v. Robinson*, 844 F.3d 137, 143 (3d Cir. 2016).

8

committing the predicate offense."[29] "The discharge of a firearm, coupled with resulting personal injury, qualifies as a use of physical force."[30] Christian Tigsi was shot and killed. Accordingly, the element of physical force was present.

### E. Moz-Aguilar's Challenge to the District Court's Failure to Dismiss his Charge Pursuant to 18 U.S.C. § 924(j).[31]

Moz-Aguilar also argues that the district court erred in declining to dismiss his charge pursuant to 18 U.S.C. § 924(j) pretrial. Aguilar Br. at 34. Because he cannot show prejudice, his claim fails. As we have just explained, he was convicted under 18 U.S.C. § 924(c) and (j) for causing the death of a person with a firearm in the course of a violation of § 924(c).[32] He received a 120-month sentence for his § 924(c) conviction and a life sentence for his conviction under § 924(j).[33]

The government concedes that although Moz-Aguilar did not raise this concern before the district court, the sentence imposed violated the Double Jeopardy Clause because the court should have merged the §§ 924(c) and (j) counts for purposes of Moz-Aguilar's judgment of conviction and sentencing.[34] To be entitled to relief he must satisfy all four prongs of the plain error standard of review. He must show: "(1) there is an

---

[29] *United States v. Galati*, 844 F.3d 152, 155 (3d Cir. 2016).

[30] *Id.*

[31] We review issues of statutory interpretation *de novo*, *United States v. Ferriero*, 866 F.3d 107, 113 n.4 (3d Cir. 2017), and review unpreserved double jeopardy claims for plain error. *United States v. Miller*, 527 F.3d 54, 60 (3d Cir. 2008).

[32] A29-31, 11750.

[33] *Id*.

[34] Gov. Br. at 64–65.

'error'; (2) the error is 'clear or obvious, rather than subject to reasonable dispute'; (3) the error 'affected the appellant's substantial rights, which in the ordinary case means' it 'affected the outcome of the district court proceedings'; and (4) 'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"[35] The government concedes that the first three prongs are satisfied here. However, as Moz-Aguilar actually benefitted from his failure to raise the double jeopardy challenge at sentencing, his claim fails.

Moz-Aguilar received a mandatory life sentence on the Violent Crime in Aid of Racketeering murder count and a concurrent life sentence for the RICO conspiracy conviction.[36] Both sentences were appropriate, proper, and unchallenged. The conviction he challenges – life under § 924(j) – was imposed concurrently with his two other (concurrent) life sentences. Moz-Aguilar therefore received a total sentence of life plus 120 months' imprisonment. If Moz-Aguilar had raised a double jeopardy issue, the district court would have merged the § 924(c) count with the § 924(j) count. The merged counts would have resulted in a mandatory *consecutive* life sentence pursuant to § 924(c)(1)(D)(ii). Stated differently, Moz-Aguilar should have received two *consecutive life sentences*, not three concurrent life sentences and a consecutive 120-month sentence. Accordingly, this claim fails.

---

[35] *United States v. Marcus*, 560 U.S. 258, 262 (2010) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).
[36] A29-31; A11750.

**F. Ramirez' Challenge to the District Court's Admission of Evidence of His Prior Weapon Possession.[37]**

Ramirez argues that the district court abused its discretion under Fed. R. Evid. 403 and 404(b) when it admitted evidence of his prior arrest for possession of a shotgun.[38] Courts have consistently declined to apply Rule 404(b) in the context of a RICO enterprise.[39] Moreover, even assuming that the rule did require the exclusion of this evidence, it did not require exclusion of evidence that proves the charged offense.[40] A witness testified that the arrest for shotgun possession occurred during the commission of a "mission" for the gang.[41]

**G. The District Court Reasonably Limited Garcia's Cross-Examination of Detective Tippett.[42]**

Garcia claims that the district court's limitation of his cross-examination of detective Troy Tippett violated the Sixth Amendment Confrontation Clause. We disagree.

---

[37] We review a district court's decision on the admissibility of evidence for an abuse of discretion. *United States v. Serafini*, 233 F.3d 758, 768 n.14 (3d Cir. 2000).

[38] Ramirez Br. at 8–12.

[39] *See, e.g.*, *United States v. Henley*, 766 F.3d 893, 914–15 (8th Cir. 2014) ("[E]vidence of uncharged crimes was admissible in a RICO prosecution as proof of an enterprise, of the continuity of racketeering activity, and of the defendant's knowledge of, agreement to, and participation in the conspiracy.") (internal quotations omitted).

[40] *United States v. Gibbs*, 190 F.3d 188, 217–18 (3d Cir. 1999) ("In cases where the incident offered is a part of the conspiracy alleged in the indictment, the evidence is admissible under Rule 404(b) because it is not an 'other' crime. The evidence is offered as direct evidence of the fact in issue, not as circumstantial evidence requiring an inference as to the character of the accused.").

[41] A8508–09.

[42] "We review the court's decision to limit cross-examination for abuse of discretion[.]" *United States v. Ellis*, 156 F.3d 493, 498 (3d Cir. 1998).

"While the Confrontation Clause guarantees a criminal defendant the right to confront witnesses on cross-examination, a district court retains wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination[.]"[43] Moreover, "a restriction will not constitute reversible error unless it is so severe as to constitute a denial of the defendant's right to confront witnesses against him and it is prejudicial to [his/her] substantial rights."[44] The line of questioning that Garcia was prevented from pursuing was irrelevant to any material issue. Garcia was attempting to establish that, although he initially waived his *Miranda* rights and spoke with officers at length, he was questioned again after he asked for the interview to cease.[45] This was not relevant, however, because each of his incriminating statements occurred during the initial interview to which he voluntarily consented.[46]

## H. Due Process Challenges to the Jury Charge and Verdict Sheet.[47]

Oliva contends that (1) the district court abused its discretion by denying his requests for special interrogatories, and Moz-Aguilar (joined by Contreras) argues (2) the

---

[43] *United States v. Jimenez*, 513 F.3d 62, 76 (3d Cir. 2008) (internal citations omitted).

[44] *United States v. Casoni*, 950 F.2d 893, 918–19 (3d Cir. 1991).

[45] Garcia Br. at 12–16.

[46] *See* A6302 (District Court: "what you're doing here doesn't purport to indicate in any way, shape, or form that the prior statements were in any way involuntary. All they end up showing is that this man asked some additional questions.").

[47] We review a district court's denial of a request for special interrogatories for an abuse of discretion, see *United States v. Console*, 13 F.3d 641, 663 (3d Cir. 1993), and "exercise plenary review in determining whether the jury instructions stated the proper legal standard." *United States v. Berrios*, 676 F.3d 118, 136 (3d Cir. 2012) (internal citations omitted).

court erred in instructing the jury on *Pinkerton* liability. We again disagree.

Appellate courts "commit the decision of whether and how to utilize special interrogatories in [complex] cases to the broad discretion of the district court."[48] Here the district court evaluated whether using such interrogatories would aid the jury, but concluded that in an already complex multi-defendant case, special interrogatories would only serve to confuse the jury.[49]

Similarly, the district court did not err in instructing the jury on *Pinkerton* liability. To the extent that Moz-Aguilar contends *Pinkerton* liability instructions are generally inappropriate in RICO conspiracy cases, this claim fails because the district court only instructed the jury on *Pinkerton* liability insofar as that doctrine pertained to the VICAR murder counts. The instruction was not given for the RICO conspiracy counts.[50] Moreover, the government had no duty to provide notice of its intention to pursue the *Pinkerton* liability theory.[51] Finally, the argument that the *Pinkerton* charge resulted in undue confusion and complexity that substantially influenced the verdict is without any support in the record.

---

[48] *United States v. Ogando*, 968 F.2d 146, 149 (2d Cir. 1992).
[49] A11114–15 (noting jury already "ha[d] an extraordinarily difficult and complex task" that the court was not going to "complicate[] and compound[]" by including "special interrogatories that are not absolutely necessary").
[50] *See* A10515, 11378-85.
[51] *Id.*

13

## I. Appellants' Prosecutorial Misconduct Claims Fail.[52]

### 1. Challenge to the Scope and Duration of Rebuttal Summation

Flores claims that the government's rebuttal summation "exceeded the proper scope of such argument" because it was too long and repetitive.[53] He does not, however, cite to any persuasive authority to sustain this claim. Moreover, Flores does not allege that the government developed any new arguments during rebuttal summation. In fact, his primary claim is that rebuttal was too long because "[t]here was nothing in the government's rebuttal summation not already delivered once to the jury in the government's initial opening argument."[54] Indeed, even if this rebuttal (not unlike most summations) was too long, the evidence against Flores was overwhelming, and Flores does not claim that the prosecutor's summation relied on facts not in evidence or misled the jurors.

### 2. The District Court Did Not Clearly Err When, During Rebuttal Summation, It Struck the Government's Suggestion that Palencia Could Have Called a Handwriting Expert and Issued a Curative Instruction to the Jury.[55]

---

[52] We review preserved claims of prosecutorial misconduct for an abuse of discretion and unpreserved claims for plain error. *United States v. Lee*, 612 F.3d 170, 193 (3d Cir. 2010). For unpreserved claims, "[t]here must be an 'error' that is 'plain' and that 'affect[s] substantial rights.'" *United States v. Olano*, 507 U.S. 725, 732 (1993). "'Affecting substantial rights' means that the error must have been prejudicial to the defendant and have affected the outcome of the district court proceeding." *United States v. Brennan*, 326 F.3d 176, 182 n.2 (3d Cir. 2003) (quoting *Olano*, 507 U.S. at 734).

[53] Flores Br. at 16–20.

[54] *Id.* at 19.

[55] Palencia concedes that he did not raise this issue before the district court, *see* Palencia Br. at 34, so our review is for plain error. *United States v. Thame*, 846 F.2d 200, 204 (3d Cir. 1988). We grant relief where the error is clear, prejudicial, and seriously affects the fairness, integrity, or public reputation of the proceedings. *See Olano*, 507 U.S. at 732.

A witness, Sean Williams, testified that Palencia gave him a handwritten note with instructions to lie to law enforcement.[56] In summation, Palencia's counsel attacked Williams' credibility, suggesting that Williams himself wrote the note instead of Palencia. Palencia's counsel also attacked the government's failure to hire a handwriting expert to demonstrate that the letter was not, in fact, written by Williams.

The government, in rebuttal summation, reiterated that the burden of proof was "completely on the government, always," but noted that Palencia had called his own expert witness, a former DEA special agent, but never brought up the note in question. The prosecutor stated: "I would point out to you that they put on a case that consisted of . . . a federal agent with 30 years of experience in law enforcement . . . . [And] [t]hey had letters. Not one word from them, from their witness, about those letters." The district court quite correctly observed that this statement was "close to burden shifting" and so struck the statement and issued an effective and appropriate curative instruction.[57]

Nevertheless, Palencia claims that the government's statement improperly shifted the burden and thereby "attack[ed] the integrity of defense counsel."[58] Citing our analysis in *United States v. Keller*,[59] the government argues that the statement was appropriate because "[i]t is perfectly proper to comment on the failure of the defense to call a potentially helpful witness, at least where, as here, the comment could not be construed

---

[56] A5639-41.
[57] A11200.
[58] Palencia Br. at 39–41.
[59] 512 F.2d 182 (3d Cir. 1975).

as a comment on the failure of the defendant to testify."[60] We agree. Moreover, Palencia

has not cleared the high standard we utilize for plain error review. He has not shown that

the district court's treatment of the government's statement affected his substantial rights

or "seriously affect[ed] the fairness, integrity or public reputation of judicial

proceedings."[61]

### 3. The Government Appropriately Used Circumstantial Evidence to Demonstrate Palencia's Intent and Knowledge

Palencia argues that in summation and rebuttal summation, the government "used

acts of past misconduct as evidence that he had a propensity to commit murder."[62] He

cannot establish the requisite plain error.[63] Propensity evidence is unquestionably

improper.[64] However, "[k]nowledge, intent, and lack of mistake or accident are well-

established non-propensity purposes."[65] Palencia's conclusory allegation that the

government used this evidence in summation, not for intent and knowledge, but for

---

[60] *Id*. at 186. *See also United States v. Balter*, 91 F.3d 427, 441 (3d Cir. 1996) (The government may "comment[] on the failure of [the defendant] to point to any evidence in the record supporting his theory of what occurred. Such a comment does not implicate any of the burden-shifting concerns that are raised when a prosecutor points to a defendant's failure to testify or improperly suggests that the defendant has the [] burden of producing evidence.").

[61] *Brennan*, 326 F.3d at 182 n.2.

[62] Palencia Br. at 41–43.

[63] *See id*. at 34 (acknowledging plain error review applies to these unpreserved claims).

[64] *United States v. Caldwell*, 760 F.3d 267, 275 (3d Cir. 2014) (discussing "the longstanding concern that evidence of prior bad acts, when offered only to show the defendant's propensity to commit the charged crime, is said to weigh too much with the jury and to so overpersuade them as to prejudice one with a bad general record and deny him a fair opportunity to defend against a particular charge.") (internal citations omitted).

[65] *United States v. Givan*, 320 F.3d 452, 461 (3d Cir. 2003).

propensity is not enough to show that the court erred in declining to *sua sponte* raise and sustain an objection.

### 4. Contreras' Claim that the Government Constructively Amended the Indictment in Summation Fails.

Contreras argues that a reference made by the government in summation improperly suggested to jurors that they could also convict him of accessory after the fact for the murder of Spencer Cadogan.[66] The government stated that Contreras offered "the same services"[67] as those he offered after the murder of Jessica Montoya to other MS-13 members following the murder of Spencer Cadogan.

We "examine the prosecutor's [alleged] offensive actions in context and in light of the entire trial, assessing the severity of the conduct[] [and] the effect of [any] curative instructions."[68] Here, aside from a single statement, the remainder of the government's summation properly referred only to Contreras' actions following the Montoya murder as evidence of his accessory after the fact charge. As the jury instructions did so as well, we find no error.[69]

### 5. The Government Did Not Commit Prosecutorial Misconduct by Arguing that Reyes-Villatoro Gave Away His Car for Free.

Reyes-Villatoro argues that the government relied on evidence which it "knew or had good reason to know was" false, when it argued that Reyes-Villatoro gave away his

---

[66] Contreras Br. at 15–16.
[67] A10573.
[68] *United States v. Lee*, 612 F.3d 170, 194 (3d Cir. 2010) (quoting *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001)).
[69] A11404-05.

car for free.[70] The government based this claim on the New Jersey Motor Vehicle certificate of title for Reyes-Villatoro's car that was admitted at trial by stipulation[71] and included: Reyes-Villatoro as the seller; "gift" as the "sale price"; and "3/24/09" as the date of sale.[72] This reliance on the title was proper. "[O]nce a piece of evidence has been properly admitted the prosecution may 'ask the jury to draw permissible inferences from anything that appears in the record.'"[73]

Even if the government's reliance on the title was improper, Reyes-Villatoro cannot show prejudice. The government points out that it does not matter whether he gave his car away for free or sold it after he learned that law enforcement suspected his involvement in the murder. The jury could conclude that the fact that Reyes-Villatoro found a way to get rid of the car demonstrated consciousness of guilt. The district court's consciousness of guilt instructions made that same point.[74]

## II. CONCLUSION

For the reasons set forth above, we will affirm the judgment of the district court for all claims by all defendants.

---

[70] Reyes-Villatoro Br. at 30.
[71] A2283-84.
[72] A2291.
[73] *United States v. Sullivan*, 803 F.2d 87, 91 (3d Cir. 1986) (quoting *Oliver v. Zimmerman,* 720 F.2d 766, 770 (3d Cir. 1983) (per curiam)).
[74] *See* A11316 (stating that "the disposal of property . . . may indicate that a specific defendant thought he was guilty of the crime charged and was trying to avoid punishment.").